19586

SOUTH CAROLINA STATE HIGHWAY DEPARTMENT, Appellant, v. J. Marshall BOOKER, Respondent

(195 S. E. (2d) 615)

*Messrs. Daniel R. McLeod, Atty. Gen., Ellison D. Smith, IV,* and *Randall T. Bell, Asst. Attys. Gen.,* of Columbia, *J. N. Malphrus,* of Ridgeland, and *Bogoslow and Goolsby,* of Walterboro, *for Appellant,*

248

*Mesrs. Dowling, Dowling, Sanders and Dukes, P.A.,* of Beaufort, *for Respondent,*

March 15, 1973.

*Per Curiam:*

We are of the opinion that the order of the Honorable William L. Rhodes, Jr., Trial Judge, properly sets forth and disposes all the issues submitted to this Court on appeal.

Let the order of Judge Rhodes be printed as the directive of this Court.

## ORDER OF JUDGE RHODES

On April 28, 1972, the South Carolina State Highway Department served notice on the Condemnee of its taking of 16.89 acres of land owned by the Condemnee in Jasper County, South Carolina, for use as a Welcome Center. On May 16, 1972, the Board of Commissioners met and found the amount of just compensation, which was later tendered to the Condemnee by check. Within the Statutory time Condemnee appealed bringing the matter into this Court on a trial *de novo*.

Both the Condemnor and the Condemnee served Interrogatories and started discovery proceedings under the rules provided therefor in this State.

On August 4, 1972, the Condemnee took the oral deposition of Mr. S. O. Holstein, Chief of the Right-of-Way Division of the South Carolina State Highway Department. During the deposition Mr. Holstein refused, on advice of counsel, to produce for inspection certain sketches, maps, pictures, *et cetera* enumerated in Condemnor's Answers to Interrogatories on the ground that they were contained in appraisal reports which were privileged. A timely motion was served by Condemnee seeking an Order of this Court requiring the Condemnor to produce said items for inspection.

The Condemnee has served notice on Condemnor's attorneys of his intention to take the oral deposition of Condemnor's expert witnesses. Condemnor has notified Condemnee's attorneys that its expert witnesses will be instructed not to answer questions concerning methods used or work done by the witnesses, or any other questions in regard to land evaluations found by the witnesses, on the grounds that the same are privileged and not discoverable. Condemnee has moved this Court for an Order requiring such expert witnesses to testify on oral depositions, the full and complete truth in response to the questions of Condemnee's attorneys in relation to any appraisal work and

property evaluations they may have determined in connection with the property which is the subject of this action.

In addition, Condemnor has moved this Court for an Order limiting the scope of examination of the expert witnesses on the grounds that any appraisal reports that have been or are to be prepared by any of them are privileged documents, and, as privileged documents, neither they nor any of their contents are subject to disclosure within the scope of an oral examination conducted pursuant to Rule 87 of the Circuit Court Rules.

The issues presented by the Motions, and to be decided by this Court, are as follows:

(1) Are sketches, maps, photographs, *et cetera* prepared by an expert witness and/or others and used by an expert witness in his investigation into fair market value of a landowner's property, and later contained in his report delivered to the South Carolina State Highway Department, privileged and undiscoverable so as to not be obtainable for inspection by Condemnee under Rule 88 of the Rules of Practice for the Circuit Courts of South Carolina; and

(2) Are appraisal reports and/or their contents prepared by expert real estate appraisers employed by the South Carolina State Highway Department and/or its attorneys privileged information and exempt from discovery or oral examination pursuant to Rule 87 of the Rules of Practice for the Circuit Courts of South Carolina; and

(3) Can Condemnee, during an oral deposition taken pursuant to said Rule 87, question Condemnor's expert real estate appraisers concerning their knowledge of the subject property; their method of appraising the subject property; the comparable sales they considered; their opinions and conclusions of value; and whether they found benefits or severance damages, and if so, to what extent?

The exact questions presented appear to be ones of first impression in the State of South Carolina. The Discovery

Rules, Rules 43, 87, 88, 89 and 90 became effective on June 1, 1969, except for Rule 90, which became effective on January 1, 1972.

South Carolina, effective January 1, 1972, first adopted Rule 90 for Interrogatories. The Interrogatories permitted are of a limited nature and allow discovery only of the names and addresses of witnesses, a list of photographs, maps, sketches, and other prepared documents, the names and addresses of insurance companies for liability insurance coverage, and a statement of damages. Rule 90 can be used in any civil action; but Rule 87 can be used only in cases where the amount in controversy is over Ten Thousand ($10,000.00) Dollars, unless otherwise determined by agreement of counsel or by a Court Order.

The case of *Hodge v. Myers,* 255 S. C. 542, 180 S. E. (2d) 203 (1971), is the only reported case yet considered by the Supreme Court of South Carolina involving these discovery rules.

The Hodge case turns on the interpretation of Rule 43, the Pre-Trial Conference Rule. In the then absence of Rule 90 concerning Interrogatories, the Trial Judge had ordered both Plaintiff and Defendant, during the pre-trial conference, to provide the other with a list of the names and addresses of all persons known or reasonably believed to have knowledge or information concerning the matter at hand. On appeal by one of the parties, the Supreme Court of South Carolina unanimously affirmed the action of the Trial Judge and in the decision stated in part:

"Our State Court rules do not provide for interrogatories, but the entire thrust of these rules is for full and fair disclosure to prevent a trial from becoming a guessing game or one of surprise for either party." Hodge at 205.

The Supreme Court in its opinion further stated:

"Since dockets must be kept current largely by settlements, litigants and attorneys should be allowed liberal discov-

ery. . . . Such would, of course, increase the likelihood of fair trial." Hodge at 206.

During argument on Question (1), Condemnor's attorneys took the position that no "good cause," as required by Rule 88, had been shown by the Condemnee for the production of certain maps, sketches, pictures, et cetera enumerated by Condemnor in its Answer to Condemnee's Interrogatories.

The documents sought are contained in appraisal reports previously delivered to the South Carolina State Highway Department and used by them in their process of evaluating and condemning the Condemnee's property. There can be no question about the relevancy of such documents. They all involve the Condemnee's property and the Condemnor's ultimate conclusion as to "just compensation". The Condemnee is entitled, in his preparation of the case, to know what documents, sketches, maps, pictures, et cetera were relied on by the Condemnor. The State is required to acquire the property at a price which is fair to the taxpaying public, and also the landowner is justly compensated. These are Constitutional requirements and in and of themselves constitute "good cause". Const. of S. C., Art. 1, Section 17.

The Condemnee is in Court through no fault of his own, his land is being taken without his consent; he is required to incur considerable expense to prepare for trial. If, through discovery the issues can be narrowed, the same methods of appraising used by both parties the same comparable sales considered, the same maps and sketches used, then the trial will be shortened, the issues clarified, surprise eliminated and justice accorded. These considerations meet the test of "good cause". The question of "privilege" remains and is treated hereinbelow in connection with the remaining questions.

Questions (2) and (3) involve interpretation of Rule 87. Rule 87, subd. A provides that "notwithstanding any other rule of this Court or the provisions of any statute, any party may take the testimony of any person, including a party, by

deposition upon oral examination for the purpose of discovery. . . . " Rule 87, subd. B provides that "unless otherwise ordered by this Court, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . "

The key words here are "privileged" and "relevant". As stated above, there is no question about the relevancy of any of the matters sought to be discovered in the Motions now before the Court.

South Carolina recognizes privilege in civil matters in attorney-client relations, husband-wife relations, and priest-penitent relations. The reference to privilege in the matter now being considered refers to attorney-client relations. This privilege is based upon a wise public policy that considers that the interests of society are best promoted by inviting the utmost confidence on the part of the client in disclosing his secrets to his professional advisor, under the pledge of the law that such confidence shall not be abused by permitting disclosure of such communications. *Drayton v. Industrial Life and Health Insurance Company,* 205 S. C. 98, 31 S. E. (2d) 148 (1944) and *Strickland v. Capital City Mills,* 74 S. C. 16, 54 S. E. 220. The attorney-client privilege is owned by the client and survives his death, but it can be waived by him. *Raleigh and C. and R. Company v. Jones,* 104 S. C. 332, 88 S. E. 896 (1916).

The cases cited above involved confidential communications to an attorney by one seeking legal advice and not matters prepared under the direction of an agency of the State of South Carolina for its use in evaluating and condemning an individual's property. Thus, it would appear that privileged matter in South Carolina is matter that is not intended to be introduced into evidence and/or testified to in Court. There are no South Carolina cases reported concerning the attorney-client privilege in relation to expert witnesses and there are no Statutory Laws bearing directly on this question.

In reviewing the authorities from other jurisdictions, it appears that the old view of the attorney-client privilege in relation to expert witnesses was that the expert acts merely as a messenger to relay the client's communications, such as the contents of an appraisal report, to the client's attorney.

The South Carolina Discovery Rules, as those in most States, were patterned after the Federal Rules of Civil Procedure dealing with discovery. The cases throughout this country dealing with the matter seem to be fairly well divided as to whether or not the opinions and work processes used to arrive at opinions of expert witnesses are discoverable before trial. Thus, until the recent change in the Federal Rules, considerable confusion existed, in the various jurisdictions and Federal Courts, as to the pre-trial discoverability of expert witnesses' opinions and conclusions and reports in condemnation cases. The change in those Federal Rules eliminates the confusion, at least in Federal cases. West, Rules of Civil & Appellate Procedure— Judicial Code, (1972 Ed.) at P. 68.

In several states where the Courts have failed to interpret the Court Rules to permit pre-trial discovery of expert land appraisal witnesses in eminent domain proceedings, their legislatures have passed clarification statutes requiring that the Condemnor disclose appraisal reports and/or the substance and bases thereof to the Condemnee. This has occurred, most notably, in New York in 1965, Virginia in 1972, and in Georgia, effective July 1, 1972.

In other states, the Courts have decided this issue squarely and hold that none of the usual defenses against discovery are valid.

In the Florida case of *State Road Department v. Cline,* 122 So. (2d) 827 (Fla. App. 1960), the Court followed the well-known case of *Hickman v. Taylor,* 329 U. S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947), and held that the work of Condemnor's appraisers constituted the work-product of the Condemnor's attorney and was not subject to

discovery. However, one year later, the Florida Court in *Shell v. State Road Department,* 135 So. (2d) 857 (Fla. 1961) reversed the *Cline* case and allowed discovery not only of the appraisers' opinions, but also of their reports and work sheets. The Court argued that in an action where land was taken without the consent and through no fault of the owner, the Condemnor should strive to afford the owner all the prerequisites necessary to establish full and just compensation . The Court also stated that once an appraisal had been revealed, the owner might be more apt to settle, with a resultant speedy and less expensive determination of the claim. See also *State ex rel. Willey v. Whitman,* 91 Ariz. 120, 370 P. (2d) 273 (1962).

In the 1962 California case of *People ex rel. Department of Public Works v. Donovon,* 57 Cal. (2d) 346, 19 Cal. Rptr. 473, 369 P. (2d) 1 (1962), the Court circumvented earlier California cases holding to the contrary, and allowed Condemnee to examine Condemnor's appraisers as to the appraisers' subjective knowledge and opinions. In that case, the Court reasoned that although confidential communications to a State's attorney were privileged, the Defendant was not seeking a disclosure of that communication. She sought only the opinion of the expert with regard to the fair market value of the property condemned, and such an inquiry goes only to matters peculiarly within the subjective knowledge of an appraiser rather than to any communication he may have made to Condemnor's counsel. The Court concluded that "this knowledge, in and of itself, is not privileged, nor does it acquire a privileged status merely because it may have been communicated to the attorney." See also *Grand Lake Drive-In v. Superior Court,* 179 Cal. App. (2d) 122, 3 Cal. Rptr. 621, 86 A. L. R. (2d) 129 (1960).

In another decision, the California Court allowed full discovery as to all the facts and opinions of an appraisal report declaring that these items were not within the protection of the attorney-client privilege. *Oceanside Union School District v. Superior Court of San Diego County,* 58 Cal. (2d)

180, 23 Cal. Rptr. 375, 373 P. (2d) 439 (1962). The Court stated in that case that it could not hold the material as privileged merely because it was the result of an expert's mental calculations and was delivered to an attorney. In discussing the Condemnor's assertion that discovery of such appraisal reports would be contrary to public policy, the Court stated:

"The purpose of the condemnation action . . . is to determine the fair market value of the property. Assumedly, petitioner (condemnor) believes that its appraisers have arrived at a fair market value. If public interest . . . would suffer by disclosure of the fair market value of the condemned property, then the statute on privilege would have to fall before the *constitutional requirements that no private property be taken without due process of law.*"

In the Wisconsin case of *State ex rel. Reynolds v. Circuit Court for Waukesha County,* 15 Wis. (2d) 311, 112 N. W. (2d) 686, (1961), re-hearing denied, 113 N. W. (2d) 537, (1962), complete disclosure was allowed despite the Condemnor's assertion of the attorney-client privilege and the work-product defense. The Court further stated that it found no invasion of the proprietary rights of the experts in such a situation. It reasoned that by allowing the pre-trial discovery, the Condemnee would gain an opportunity to prepare for cross-examination and assemble rebuttal material, whereas the Condemnor would lose only the tactical advantage of surprise which might be gained from withholding the testimony until the time of trial.

In other cases, another defense to full pre-trial disclosure has been called *"fundamental unfairness."* The fundamental unfairness approach would deny discovery on the ground that it would be unfair to enable one party to use another's trial preparation without paying compensation. (Nichols, Eminent Domain, Section 7.03 (2) (d) at pp. 7-32).

Underlying this position are two theories: The first is that such information constitutes property of the expert and hence that a litigant "buys" it from him. See *Walsh v. Rey-*

*nolds Metals Company,* 15 F. R. D. 376 (D. N. J., 1954). The second theory is that unlimited discovery would promote laziness and would permit parties to jockey for position by outwaiting each other before hiring experts. See *Schuyler v. United Air Lines, Inc.,* 10 F. R. D. 111 (M. D., Pa. 1950).

In the Washington State case of *Sneddon v. Edwards,* 53 Wash. (2d) 820, 335 P. (2d) 587 (1959), the Supreme Court of Washington rejected the unfairness rule, on the ground that one party can call his adversary's expert at trial and inquire fully into his opinions as well as his observations.

The Federal case of *United States v. 23-76 Acres of Land,* 32 F. R. D. 593 (D. Md., 1963) has squarely faced these issues. In what has been called a "well-reasoned decision", the Court attacked the various defenses that have arisen in pre-trial discovery procedures. Pre-Trial Discovery in Condemnation Proceedings: An Evaluation, 42 St. John's L. Rev., 52, 60 (1967).

The Court dismissed the attorney-client and the work-product defenses, noting that by its basic nature expert opinion was subjective and thus there was no basis to believe that the information sought, though critically relevant to the main issue in the case, could be obtained in any manner other than disclosure.

With respect to the unfairness defense, the Court concluded that the sole issue in any condemnation case must be the question of just compensation, and, in determining this question, experts must be employed because the property owner is usually ignorant of the value of his own land. The Court stated:

"Where value is the basic, if not sole, issue in litigation, it is not unfair for either party to know in advance of trial what the other party intends to prove, what opinions his opponent's experts hold, the method by which those opinions were formulated, and the facts upon which they are based. Id. at 597."

The Court, in this Federal case, recognized that unfairness had to be tested by Federal Law, but it took judicial notice that Maryland Law allowed for full discovery in condemnation cases and that the results were that *issues were sharpened, trial time was reduced* and *fair settlements were encouraged.*

Thus, from an examination of the authorities, it appears that the modern view is to permit full discovery of the appraisal reports of expert witnesses and/or the contents of such reports in land condemnation cases from parties and/or the witnesses, as well as pre-trial discovery by oral depositions of such witnesses as to their knowledge of the subject property, their method of appraising the subject property, the comparable sales considered, their opinions and conclusions of value and whether benefits or severance damages were found, and if so, to what degree. Of course, to the extent that a party may have such information concerning the subject property, *et cetera,* that information, too, should be fully discoverable, before trial, in the modern view.

*Therefore,* it is the holding of this Court that appraisal reports and/or their contents prepared by expert real estate appraisers employed by the South Carolina State Highway Department and/or its attorneys, and the knowledge of such appraisers concerning the subject property, their methods of appraising the subject property, the comparable sales they considered, their opinions and conclusions of value, and whether they found benefits or severance damages, and if so, to what extent, are relevant and are not privileged, and are therefore fully discoverable in pre-trial discovery proceedings pursuant to the Rules of Practice for the Circuit Courts of South Carolina. This Court further finds and holds that good cause exists to require production for inspection and/or copying by Condemnee, under Rule 88 of the Rules of Practice for the Circuit Courts of South Carolina, any maps, sketches, photographs, *et cetera* which are contained in appraisal reports delivered to Condemnor.

*Now, therefore, it is ordered, adjudged and decreed*:

1. That the Condemnor produce for inspection by the Condemnee or Condemnee's attorneys, all the plats, sketches, pictures, and any other documents in its possession, whether contained in appraisal reports or not, having been prepared for or used by Condemnor, or any of its agents and/or proposed agents in the determination of value and condemnation of the Condemnee's property, and

2. That during the taking of oral depositions of Condemnor and its witnesses, pursuant to, Rule 87 of the Rules of Practice for the Circuit Courts of South Carolina, the deponents shall answer questions propounded to them by the Condemnee's attorneys as to any documents, facts, methods, opinions formed and conclusions reached concerning investigations, at any time, of the landowner's property, and to testify the full and complete truth thereto, and

3. That both parties shall provide the other party with a full and complete list of the names and addresses of all witnesses proposed to be called in this case not later than forty-five (45) days before its anticipated trial and to, call no other witnesses at such trial except by Order of the Court, upon good cause shown, and

*It is so ordered.*