# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Theodore G. Hartsock, Jr., as Personal Representative of the Estate of Sarah Mills Hartsock (Estate of Sarah Mills Hartsock), Plaintiff-Respondent,

v.

Goodyear Dunlop Tires North America Ltd., a foreign corporation; Goodyear Tire & Rubber Company, a foreign corporation, Defendants-Appellants.

Appellate Case No. 2016-002398

---

## CERTIFIED QUESTION

---

## ON CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

Opinion No. 27793
Heard September 28, 2017 – Filed April 25, 2018

---

## CERTIFIED QUESTION ANSWERED

---

Wallace K. Lightsey, of Greenville, M. Gary Toole, of McDonald, Toole & Wiggins, of Orlando, Fl., pro hac vice, E. Duncan Getchell, Jr. and Michael H. Brady, both of McGuire Woods LLP, both of Richmond, Va., pro hac vice, for Defendants-Appellants.

Mark C. Tanenbaum of Mark C. Tanenbaum, P.A., of Mt. Pleasant; and Mia Lauren Maness, of Charleston, both for Plaintiff-Respondent.

Debora B. Alsup, of Thompson & Knight LLP, of Austin, Tx., pro hac vice, for Amicus Curiae the Rubber Manufacturers Association.

Frank L. Epps and Hannah Rogers Metcalfe, both of Greenville, for Amicus Curiae the South Carolina Association for Justice.

---

**JUSTICE KITTREDGE:**  This Court accepted the following certified question from the United States Court of Appeals for the Fourth Circuit:

> Does South Carolina recognize an evidentiary privilege for trade secrets?

Answer: South Carolina does recognize an evidentiary privilege for trade secrets, but it is a qualified privilege.

## I.

In its Order of Certification, the Fourth Circuit summarized the relevant facts and procedural history as follows:

> In July 2010, Sarah Mills Hartsock was killed in an automobile crash on Interstate 26 in Calhoun County, South Carolina.  Her personal representative, Theodore G. Hartsock, Jr., brings this survival and wrongful death action asserting claims under South Carolina law for negligence, strict liability, and breach of warranty.  Mr. Hartsock alleges that the vehicle in which Mrs. Hartsock was riding was struck head-on by another vehicle.  That vehicle had crossed the median after suffering a blowout of an allegedly defective tire that Goodyear Dunlop Tires North America Ltd. and Goodyear Tire & Rubber Company [collectively "Goodyear"] designed, manufactured, and marketed.  Federal subject-matter jurisdiction exists under 28 U.S.C. § 1332 based upon complete diversity of citizenship between the parties and damages alleged to be greater than $75,000.

During pretrial discovery a dispute arose between the parties over certain Goodyear material relating to the design and chemical composition of the allegedly defective tire. Goodyear objected to producing this material, asserting that it constitutes trade secrets. The district court eventually found, and Mr. Hartsock does not dispute, that the material does, in fact, constitute trade secrets. However, the court ordered Goodyear to produce the material subject to a confidentiality order. In doing so, the court applied federal discovery standards, rejecting Goodyear's contention that South Carolina trade secret law applies.

Goodyear thereafter moved for reconsideration, reiterating its argument that South Carolina law applies. The district court denied the motion but certified its order for interlocutory review pursuant to 28 U.S.C. § 1292(b). The court also stayed the proceedings pending Goodyear's anticipated appeal. After Goodyear appealed, a panel of [the Fourth Circuit] agreed to permit the appeal. The parties filed briefs, and [the Fourth Circuit] heard oral arguments in October 2016.

*Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.*, 672 F. App'x 223, 224–25 (4th Cir. 2016) (footnotes omitted).

## II.

We answer the certified question by analyzing how privileges are recognized in South Carolina and evaluating the South Carolina Trade Secrets Act (hereinafter "Trade Secrets Act"), S.C. Code Ann. §§ 39-8-10 to -130 (Supp. 2017).

## A.

An evidentiary privilege is "[a] privilege that allows a specified person to refuse to provide evidence or to protect the evidence from being used or disclosed in a proceeding." *Evidentiary Privilege*, BLACK'S LAW DICTIONARY (10th ed. 2014). The principle underlying recognition of a privilege is simple: although the public "has a right to every man's evidence," an exception may be justified "by a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." *Jaffee v. Redmond*, 518 U.S. 1, 9 (1996) (citations omitted). "[A]n asserted privilege must also 'serv[e] public ends.'" *Id.* at 11

(quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).[1] In addition, "[i]t is well recognized that a privilege may be created by statute" as deemed appropriate by Congress or a state legislature. *Baldrige v. Shapiro*, 455 U.S. 345, 360 (1982); *accord In re Decker*, 322 S.C. 215, 218–19, 471 S.E.2d 462, 463–64 (1995).

Some privileges are not limited solely to communications, and some privileges are absolute, while others are qualified. Among the more well-known privileges recognized in South Carolina are the privilege against self-incrimination, U.S. Const. amend. V, the attorney-client privilege, *Drayton v. Industrial Life & Health Ins. Co.*, 205 S.C. 98, 31 S.E.2d 148 (1944), and the news media qualified privilege.[2] S.C. Code Ann. § 19-11-100 (2014). A review of privileges in general

---

[1] For example, the United States Supreme Court has stated that the spousal, attorney-client, and psychotherapist-patient privileges are "rooted in the imperative need for confidence and trust." *Jaffee*, 518 U.S. at 10 (citation omitted). Moreover, the United States Supreme Court explained that these privileges serve public ends:

> [T]he purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." And the spousal privilege . . . is justified because it "furthers the important public interest in marital harmony." The psychotherapist privilege serves the public interest by facilitating the provision of appropriate treatment for individuals suffering the effects of a mental or emotional problem.

*Id.* at 11 (citations omitted). South Carolina has also recognized these privileges and their importance to society. *See, e.g., S.C. State Highway Dep't v. Booker*, 260 S.C. 245, 254, 195 S.E.2d 615, 619–20 (1973).

[2] For example, the news media has a strong but nevertheless qualified privilege. S.C. Code Ann. § 19-11-100(A) (the news media "has a *qualified privilege* against disclosure of *any information, document, or item* obtained or prepared in the gathering or dissemination of news" (emphasis added)). The privilege is qualified in that section 19-11-100(B) provides disclosure may be compelled if it is established that the privilege was waived or it "(1) is material and relevant to the controversy for which the testimony or production is sought; (2) cannot be reasonably obtained by alternative means; and (3) is necessary to the proper

reveals the common thread is that public policy favors the confidentiality of these communications or information. *See, e.g.*, *S.C. State Highway Dep't v. Booker*, 260 S.C. 245, 254, 195 S.E.2d 615, 619–20 (1973). Moreover, "privileged matter in South Carolina is matter that is not intended to be introduced into evidence and/or testified to in Court." *Id.* at 254, 195 S.E.2d at 620.

South Carolina has one evidentiary rule referencing privileges—Rule 501, SCRE—which states:

> *Except as required* by the Constitution of South Carolina, by the Constitution of the United States or *by South Carolina statute*, the privilege of a witness, person or government shall be governed by the principles of the common law as they may be interpreted by the courts in the light of reason and experience.

(emphasis added). Thus, unlike many other jurisdictions, South Carolina does not delineate specific privileges through its rules of evidence. Rather, our evidentiary privileges are provided through an assortment of sources: the South Carolina or United States Constitution, the common law, or a statutory provision.

When construing a purported statutory privilege, there is no requirement that the word "privilege" be used by the General Assembly in order to evidence an intent to create one. *See, e.g.*, *State v. Copeland*, 321 S.C. 318, 323, 468 S.E.2d 620, 624 (1996) (citing section 19-11-30 of the South Carolina Code of Laws as providing a marital privilege although the statute does not use the word "privilege" and simply states "no husband or wife *may be required to disclose* any confidential or, in a criminal proceeding, any communication made by one to the other during their marriage" (emphasis added)). Our role as a court, of course, is to interpret a statute to discern and effectuate legislative intent. *Charleston Cty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature.").

With these principles in mind, we turn to the question at hand—does South Carolina recognize an evidentiary privilege for trade secrets?

---

preparation or presentation of the case of a party seeking the information, document, or item." S.C. Code Ann. § 19-11-100(B). As a result, the qualified privilege enjoyed by news media can be overcome when the requesting party fulfills the stringent balancing test articulated in the statute.

**B.**

Generally, a trade secret is "information including, but not limited to, a formula . . . process, design, prototype, procedure, or code," which "derives independent economic value . . . from not being . . . readily ascertainable by proper means." S.C. Code Ann. § 38-9-20(5)(a). "[T]he value of a trade secret hinges on its secrecy," so "owners or inventors go to great lengths to protect their trade secrets from dissemination." *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 472, 674 S.E.2d 154, 161 (2009) (quoting *Bridgestone Am. Holding, Inc. v. Mayberry*, 878 N.E.2d 189, 192 (Ind. 2007)) (footnote omitted). Indeed, the importance of "trade secret protection to a healthy economy has been widely accepted for some time." *Id.* "Over the last two hundred years, the law has developed mechanisms for accomplishing this end." *Id.* In South Carolina, the Trade Secrets Act is designed to protect trade secrets before, during, and after litigation. *See* S.C. Code Ann. §§ 39-8-10 to -130 (Supp. 2017); *see also Laffitte*, 381 S.C. at 473–74, 674 S.E.2d at 161–62. At issue here is the protection afforded during litigation.

Originally, in 1992, the General Assembly enacted the Uniform Trade Secrets Act ("UTSA"), which was narrow and focused upon actions regarding the misappropriation of trade secrets. However, in 1997, the General Assembly effectively repealed UTSA and replaced it with the Trade Secrets Act, which affords broad trade secret protections in any action—not just misappropriation. S.C. Code Ann. § 39-8-60(B). Most importantly, the new legislative provisions added the requirement for a "substantial need" to be shown before a trade secret holder would be compelled to disclose a trade secret.[3] *Id.*

In order to be protected, a trade secret must be the subject of reasonable efforts "to maintain its secrecy," S.C. Code Ann. § 39-8-20(5)(a)(ii), and, if so, the trade secret "is protectable and enforceable until it is disclosed or discovered by proper means." S.C. Code Ann. § 39-8-30(A). The Trade Secrets Act provides protection "[i]n any civil action where discovery is sought of information designated by its

---

[3] Almost all states have adopted a form of UTSA or enacted their own legislation to protect trade secrets. However, no other state's trade secret statute includes all of the various provisions and protections found in South Carolina's Trade Secrets Act, nor does any other state require a substantial need to be shown before disclosure will be compelled. Instead, more than a third of the states have enacted a rule of evidence providing a qualified privilege for trade secrets, which allows the trade secret holder to refuse to disclose the trade secret unless the court found nondisclosure would tend to conceal fraud or otherwise work injustice.

holder as a trade secret." S.C. Code Ann. § 39-8-60(B). We find it is here that the General Assembly evidenced its intent to create a qualified privilege for trade secrets.

Although the General Assembly did not use the word "privilege," the protections afforded by section 39-8-60—namely, that the holder of a trade secret may refuse to disclose it—are the quintessence of a privilege and evince an unmistakable legislative intent to protect trade secrets from disclosure where public policy demands it. Indeed, the Trade Secrets Act demonstrates not only the Legislature's intent for a trade secrets privilege to exist but also the standards that must be met for this qualified privilege to be overcome.

Most importantly, the new legislative provisions added the requirement for a "substantial need" to be shown before a trade secret holder would be compelled to disclose a trade secret. S.C. Code Ann. § 39-8-60(B). Before compelling disclosure, a court must determine "whether there is a substantial need by the party seeking discovery [of] the information." *Id.* Thus, section 39-8-60 of the Trade Secrets Act requires a heightened standard—substantial need—before disclosure of the trade secret will be ordered. A substantial need may be shown if four criteria are met:

> (1) the allegations in the initial pleading setting forth the factual predicate for or against liability have been plead with particularity;
>
> (2) the information sought is directly relevant to the allegations plead with particularity in the initial pleading;
>
> (3) the information is such that the proponent of the discovery will be substantially prejudiced if not permitted access to the information; and
>
> (4) a good faith basis exists for the belief that testimony based on or evidence deriving from the trade secret information will be admissible at trial.

*Id.* § 39-8-60(B).

This substantial need standard is complemented by the provisions of Rule 26(c)(7) of the South Carolina Rules of Civil Procedure. This Court in *Laffitte* noted that,

without the benefit of section 39-8-60, federal and state courts typically apply a three-part balancing test to determine if a trade secret is subject to disclosure with a protective order under Rule 26(c)(7): (1) the party opposing discovery must show the information is a trade secret and disclosure would be harmful; (2) the party seeking discovery must show the information is "relevant and necessary"; and (3) the court must weigh the potential harm against the need for disclosure. *Laffitte*, 381 S.C. at 474–75, 674 S.E.2d at 162 (examining the Trade Secrets Act in the context of a plaintiff's discovery request for a tire manufacturer's skim stock formula in a similar product liability action). While noting this balancing test was held by other courts to govern the discovery of trade secret information, the Court also observed that, consistent with section 39-8-60, South Carolina requires a higher standard than the generally prevailing "relevant and necessary" inquiry. *Id.* at 475–76, 674 S.E.2d at 163.

In *Laffitte*, we explained "that the information [sought] must be relevant not only to the general subject matter of the litigation, but also *relevant specifically to the issues involved* in the litigation." *Id.* at 475, 674 S.E.2d at 163 (emphasis added). Additionally, a party "cannot merely assert unfairness but must *demonstrate with specificity* exactly how the lack of the information will impair the presentation of the case on the merits to the point that *an unjust result* is a real, rather than a merely possible, threat." *Id.* at 476, 674 S.E.2d at 163 (emphasis added) (quoting *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 733 (Tex. 2003)). Hence, South Carolina's heightened inquiry at the "relevant and necessary" step incorporates the "substantial need" requirement of the Trade Secrets Act. Consequently, when determining whether trade secret information is subject to disclosure, the substantial need requirement is an integral part of the South Carolina balancing test.

Thus, if a substantial need is shown and the balancing test weighs in favor of the one requesting disclosure, the qualified privilege is overcome. Then, the trade secret holder will be compelled to disclose the trade secret, but the holder is nevertheless afforded protection under "an appropriate written protective order." S.C. Code Ann. § 39-8-60(E).[4] Moreover, when a trade secret is ordered to be

---

[4] *See also* Rule 26(c)(7), SCRCP (providing, upon motion and for good cause shown, a court may make any order "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way"). This rule is in accord with related provisions of our rules of civil procedure. *See* Rule 30(j)(3), SCRCP (stating counsel may object to a question on the ground that the answer is protected by a privilege and privilege is

produced during discovery, it is also protected if it is disclosed at trial. S.C. Code Ann. § 39-8-60(H) ("When information produced pursuant to this section is discussed or otherwise disclosed at a trial or hearing, the owner of the produced trade secret information is allowed to obtain individually signed confidentiality agreements from all parties . . . ."). The General Assembly has identified this as the proper balance to be struck between fostering and protecting innovation yet allowing an injured party access to critical information. It is this legislative choice we are bound to effectuate.[5]

## III.

The existence of an evidentiary privilege will invariably bring to the fore the

---

defined to include "trade secret protection"); *see also* Rule 26(b)(1), SCRCP (stating discovery may be obtained "regarding any matter, not privileged, which is *relevant to the subject matter* involved in the pending action" (emphasis added)).

[5] With respect for the dissent, we emphasize that the Fourth Circuit has asked whether South Carolina recognizes an *evidentiary* privilege for trade secrets. The dissent focuses solely on the term "privilege," without regard to the precise question posed by the Fourth Circuit, which places the question (and hence our answer) in the context of litigation. The dissent's reframing of the certified question is based on its view that the Fourth Circuit intended to ask a different question. Moreover, the dissent's reframing of the certified question fails to recognize the qualified nature of the evidentiary privilege. The fact that the provision is dependent upon the circumstances of each case speaks to the qualified nature of the privilege, which naturally arises first in the discovery phase of civil litigation. *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 106 S.W.3d 730, 732 (Tex. 2003) (discussing its trade secret privilege in the discovery context and recognizing "the application of the test would depend on the circumstances presented"); *see also* S.C. Code Ann. § 19-11-100 (providing a qualified privilege for news media and recognizing the factors to overcome it are evaluated on a case-by-case basis). As acknowledged by the Fourth Circuit in its order of certification: "The federal courts have long recognized a qualified evidentiary privilege for trade secrets" and "[b]eing a *qualified* privilege, federal courts have not afforded automatic and complete immunity against disclosure, but have in each case weighed [the] claim to privacy against the need for disclosure." *Hartsock v. Goodyear Dunlop Tires N. Am. Ltd*, 672 F. App'x 223, 226 (4th Cir. 2016) (internal quotation marks and citations omitted). We believe the proper approach is to answer the question and, if the Fourth Circuit really intended to ask a different question, we trust it will seek clarification, or reframe the question, in the normal course.

tension between the law's overarching goal of seeking the truth and the ability of an owner of a trade secret to resist its disclosure.  Here, in discerning legislative intent, the Trade Secrets Act sets forth a specific balancing test to resolve that tension.  The legislature has chosen to strike that balance through the heightened "substantial need" test.  Therefore, we answer the certified question from the United States Court of Appeals for the Fourth Circuit by holding that South Carolina does recognize a qualified evidentiary privilege for trade secrets.

**CERTIFIED QUESTION ANSWERED.**

**BEATTY, C.J., HEARN and JAMES, JJ., concur.  FEW, J., dissenting in a separate opinion.**

**JUSTICE FEW:** I agree with everything the majority has written about South Carolina law governing the discovery of trade secrets in the courts of South Carolina, except that the label of "privilege" should be applied. I would answer the certified question "No."

As we explained in *Laffitte v. Bridgestone Corp.*, 381 S.C. 460, 674 S.E.2d 154 (2009), our law regarding the discoverability of trade secrets begins with the discovery provisions of our Rules of Civil Procedure—specifically Rule 26(c)—and includes section 39-8-60 of the South Carolina Trade Secrets Act. *See* 381 S.C. at 475, 674 S.E.2d at 162-63 (stating "we hold that the balancing test associated with the discovery of trade secret information under Rule 26(c), SCRCP, governs the discovery of trade secret information"); 381 S.C. at 473, 674 S.E.2d at 161 (stating "[t]he . . . Act addresses discovery matters," citing section 39-8-60). Nothing in the majority opinion changes the discoverability of trade secrets under our rules of discovery and the Act as we explained in *Laffitte*.

The Fourth Circuit framed the certified question before us as whether we "recognize an evidentiary privilege for trade secrets." The label "privilege" means nothing in terms of the discoverability of trade secrets in the courts of South Carolina. However, as the Fourth Circuit states in its order certifying the question, "the answer [to the certified question] will determine whether federal or state law applies to the discovery of trade secrets in this diversity action." Ordinarily, the federal court's reason for asking a certified question is not our concern. Here, however, it helps us frame our answer to know that we are not being asked "what is the law," but simply what to call it.

In my opinion, regardless of the label we might place on the provisions of the Act, its provisions applicable to this dispute are rules of discovery. *See Laffitte*, 381 S.C. at 475, 674 S.E.2d at 162 (stating section "39-8-60 does not improperly limit the operation of Rule 26, but rather is consistent with Rule 26 in that both provide for reasonable restrictions on the discovery of trade secrets. The . . . Act therefore does not supplant, but rather complements, Rule 26(c)."). Federal courts apply their own discovery rules, an obvious principle of law that is the premise of the Fourth Circuit's question. Thus, the answer to the certified question is "No."

Section 39-8-60 of the Act—the provision the majority finds creates a privilege—is actually a rule of discovery. First, the section is entitled, "Preservation of secrecy *during discovery* proceedings of civil actions; substantial need defined." § 39-8-60 (emphasis added). Second, subsection 39-8-60(A) specifically addresses the application of the Act "in connection with discovery proceedings." § 39-8-

60(A). Third, the discoverability of trade secrets depends on the variable concept of "substantial need." § 39-8-60(B). This pivotal provision—clearly dependent on the circumstances of the case being litigated, as opposed to the trade secret holder's rights under the Act—is a rule of discovery. As the term substantial need is defined in the Act, whether it exists depends on the individual circumstances of each case. These are circumstances the presiding judge must determine during discovery. Fourth, subsection 39-8-60(E) requires a protective order, which by necessity will be entered pursuant to the discovery provisions of the applicable Rules of Procedure. *See* Rule 26(c), Fed. R. Civ. P. (governing the entry of discovery protective orders). Fifth, subsection 39-8-60(F) contemplates whether a "[l]itigation-sharing order" may be entered, an issue that arises only as a part of discovery. In respect to litigation sharing orders, South Carolina does not have the power to supersede provisions of federal law that encourage sharing information obtained in discovery.[6] Thus, while subsection 39-8-60(F) is applicable in state court litigation, it cannot govern how federal courts treat sharing of discovered information.

The majority opinion explains—accurately—how those provisions work in the discovery phase of state court litigation. In the discovery phase, the determination of whether information must be produced is ultimately the responsibility of the trial court. In contrast—as the majority explains—the concept of "privilege" places the determination of whether to produce information in the hands of the holder of the privilege. *See generally Privilege*, BLACK'S LAW DICTIONARY (10th ed. 2014) (defining "privilege" as, "An evidentiary rule that gives a witness the option to not disclose the fact asked for, even though it might be relevant; the right to prevent disclosure of certain information in court, esp. when the information was originally communicated in a professional or confidential relationship.").

---

[6] *See, e.g.*, National Highway Safety Administration Docket No. 2015-95, 80 Fed. Reg. 57046, 57047 (Sept. 15, 2015) (stating "[t]o the extent protective orders . . . or other confidentiality provisions prohibit vehicle safety-related information from being transmitted to NHTSA, such limitations are contrary to established principles of public policy and law"); *Charter Oak Fire Ins. Co. v. Electrolux Home Prods.*, 287 F.R.D. 130, 134 (E.D.N.Y. 2012) ("[A]llowing the sharing of discovery among related cases is an efficient and effective means of avoiding duplicative and costly discovery, as well as avoiding unnecessary delay in the adjudication of cases."); *Kamp Implement Co. v. J.I. Case Co.*, 630 F. Supp. 218, 221 (D. Mont. 1986) ("[A]ny information obtained by plaintiff through the discovery process may be shared with counsel in similar cases without restriction.").

This contrast is important. Thus, the majority places emphasis on its belief that the Act "is designed to protect trade secrets before, during, and after litigation." But this statement is only partially accurate. Certainly the Act protects trade secrets from misappropriation *by others* at all times, but the Act protects *the privilege holder's* right to refuse disclosure only in the discovery phase of a civil lawsuit. The majority states "the protections afforded by section 39-8-60—namely, that the holder of a trade secret may refuse to disclose it—are the quintessence of a privilege." However, our Trade Secrets Act permits the refusal to disclose a trade secret *only* in one context: the discovery phase of a civil action. The Act contains no provision allowing the holder of a trade secret to refuse to disclose it in the face of any other lawful authority.

The "quintessence" of privilege, however, permits the refusal of disclosure in the face of *all* lawful authority. For example, a person may refuse to disclose in criminal court privileged communications with his attorney. The marital privilege—upon which the majority relies for the notion that a statute need not use the word "privilege" to create one—applies in all courts. *See State v. Copeland*, 321 S.C. 318, 323-24, 468 S.E.2d 620, 624 (1996) (discussing the application of the marital privilege in criminal court). The same is true of the news media privilege, which applies "in any judicial, legislative, or administrative proceeding in which the compelled disclosure is sought." S.C. Code Ann. § 19-11-100(A) (2014). A so-called privilege that applies only in the discovery phase of a civil lawsuit is not a privilege; it is a rule of discovery.

Finally, I believe the language of subsection 39-8-60(C) refutes the majority's finding that the Legislature intended to create a privilege. The subsection provides,

> Direct access to computer databases containing trade secret information, so-called "real time" discovery, shall not be ordered by the court unless the court finds that the proponent of the discovery cannot obtain this information by any other means and provided that the information sought *is not subject to any privilege*.

The subsection clearly contemplates that a court might find trade secret information "is not subject to any privilege." However, that could not be possible if the Legislature already made the information privileged by passing the Act.

No matter what label is applied to the discovery provisions of the South Carolina Trade Secret Act, they are discovery provisions, and federal courts apply their own

rules of discovery. The answer to the Fourth's Circuit's question whether it should apply state law to this discovery dispute is "No."