# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

In Re:  Eleanor McCarthy Lenahan Trust under agreement Dated July 12, 2001.

Kathleen Suzanne Heslin and Maureen Theresa Moseley, in their capacities as Co-trustees of the Eleanor McCarthy Lenahan Trust under agreement dated July 12, 2001, Appellants,

v.

Mary Kathleen Lenahan, individually and in her capacity as Trustee of the Art. X(35)MKL Trust Share UAD 071201, Jean Marie Qualliu, Joan Eleanor DeMaio, and Christine Ann Lenahan, Defendants,

Of Whom Mary Kathleen Lenahan and Jean Marie Qualliu are Respondents.

Appellate Case No. 2017-000882

Appeal From Beaufort County
Carmen T. Mullen, Circuit Court Judge

Opinion No. 5689
Submitted June 3, 2019 – Filed October 30, 2019

**AFFIRMED**

Douglas S. Delaney, of Delaney Law Firm, PA, of Bluffton, and Sean Michael Bolchoz, of Bolchoz Law Firm, PA, of Hilton Head Island, both for Appellants.

Kelly MacPherson Jolley and Ariail Burnside Kirk, both of Jolley Law Group, LLC, of Columbia, for Respondents.

---

**HILL, J:** This appeal turns on whether a trust beneficiary's filing of a complaint with the South Carolina Office of Disciplinary Counsel (ODC) against a lawyer for the trustees of the trust triggers (1) the no-contest clause in the trust and (2) a hold harmless and indemnity clause contained in a settlement agreement arising out of a dispute over administration of the trust. We conclude that under the circumstances here it does not and affirm the ruling of the trial court.

I.

Eleanor McCarthy Lenahan (Settlor) set up a revocable trust in 2001. In 2012, she amended the trust and included a "no-contest" clause that states in part:

> If any beneficiary under this Trust Agreement, singly or in conjunction with any other person or persons, directly or indirectly, (i) contests in any court the validity of this Trust Agreement or, in any manner, attacks or seeks to impair or invalidate any of its provisions; . . . ; (iv) objects in any manner to any action taken or proposed to be taken in good faith by the Trustee; [or] (v) objects to any construction or interpretation of this Trust Agreement, or any provision of it, that is adopted or is proposed in good faith by the acting Trustee . . . that person's right to take any interest given to him or her by or under this Trust Agreement shall be determined as it would have been determined if the person had predeceased the execution of this instrument without surviving issue.

Settlor named two of her daughters, Kathleen Suzanne Heslin and Maureen Teresa Mosley (the Trustees), to succeed her as trustee in the event of her death. Settlor died later in 2012. The trust called for the trust estate to be distributed to Settlor's surviving children, first by way of specific cash distributions to each child and the remainder to each surviving child in equal shares.

After Settlor's death, two of her other daughters, Mary Kathleen Lenahan and Jean Marie Qualliu (the Beneficiaries), began objecting to the Trustees' actions in administering the trust. In an effort to resolve these issues, the parties entered into

a private agreement (the Settlement Agreement) containing the following indemnity and hold harmless clause:

> In the event that [one of the Trustees] or the [trust] in any capacity is a party, or is threatened to be made a party, to any action, claim, suit or proceeding, the [Beneficiaries] are hereby obligated to fully and entirely indemnify and hold harmless the [Trustees] and [the trust] from any and all costs, expenses and all attorney fees incurred by the [Trustees] and the [trust] with respect to such action, claim, suit or proceeding.

Shortly after executing the Settlement Agreement, the Beneficiaries sent letters of complaint to the ODC accusing the Trustees' lawyer of misconduct. In response, the Trustees brought this action for declaratory judgment and breach of contract, alleging the Beneficiaries' ODC complaint violated the no-contest clause of the trust and the "proceeding" initiated by the Beneficiaries in the ODC constituted a breach of the Settlement Agreement, entitling the Trustees to indemnity. The trial court granted partial summary judgment to the Beneficiaries, finding the ODC complaint did not constitute a contest of the trust because the ODC had no jurisdiction over trust contests or non-attorneys, complaints to the ODC were privileged, and complainants were immune from civil suit pursuant to Lawyer Disciplinary Enforcement Rule 13. The trial court further found probable cause existed for the contest and disinheriting the Beneficiaries based on their ODC complaint would violate public policy. Finally, the trial court granted summary judgment to the Beneficiaries on the Trustees' breach of contract claim. The Trustees now appeal.

## II.

In reviewing a grant of summary judgment, we apply the same standard as the trial court under Rule 56(c), SCRCP: we view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Gibson v. Epting*, 426 S.C. 346, 350, 827 S.E.2d 178, 180 (Ct. App. 2019). The moving party is entitled to summary judgment only if "there is no genuine issue as to any material fact." Rule 56(c), SCRCP. However, a genuine issue of material fact exists—and summary judgment must be denied—if the non-moving party submits at least a scintilla of evidence supporting each element of its claim. *Hancock v. Mid-S. Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009).

III.

A. The No-Contest Clause of the Trust

1. The ODC Complaint

We first address the Trustees' argument that the trial court erred in ruling the ODC complaint was privileged and could not constitute a violation of the no-contest clause. The Trustees maintain they are not claiming the ODC complaint against the lawyer violated the no-contest clause, but they are claiming the allegations in the complaint that criticize or relate to the Trustees' actions in administering the trust did. We find the Trustee's distinction artificial. The content of the ODC complaint is not only "absolutely privileged," but "no civil lawsuit predicated thereon may be instituted against any complainant or witness." *See* Rule 13, RLDE, Rule 413, SCACR (providing communications to the ODC relating to attorney misconduct "shall be absolutely privileged, and no civil lawsuit predicated thereon may be instituted against any complainant or witness"). It is impractical to attempt to separate out the allegations that may refer only to the Trustees' conduct from those that relate to the lawyer's conduct. It is true that Rule 2(t), RLDE defines "misconduct" as "any conduct by a lawyer constituting grounds for discipline," but the plain design of Rule 13 is to drape a blanket privilege over any communications with the Commission on Lawyer Conduct. We decline to trim the privilege by carving out the exception sought by the Trustees.

Seeking to sidestep the privilege, the Trustees point to a pretrial order by Judge Dukes that the complaint would no longer be "shielded from disclosure and/or discovery" once the ODC inquiry ended. The Trustees argue this unappealed order is now law of the case, compelling the ultimate disclosure of the complaint.

The Trustees' argument misfires. Just because evidence is discoverable does not mean it is admissible. Rule 13 deems the complaint "absolutely privileged," and nothing in the record demonstrates the privilege is inapplicable, has been waived, or ends when the ODC inquiry ends. No one argues the Beneficiaries do not hold or do not have the right to invoke the privilege. *See generally Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.*, 422 S.C. 643, 813 S.E.2d 696 (2018) (discussing law of evidentiary privilege); *see also S.C. State Highway Dep't v. Booker*, 260 S.C. 245, 254, 195 S.E.2d 615, 620 (1973) ("[P]rivileged matter in South Carolina is matter that is not intended to be introduced into evidence and/or testified to in Court."). If Judge Dukes' order is the law of the case—an issue we do not decide—it nevertheless did not rule on the admissibility of the ODC material and is therefore no help to the

Trustees' argument.

### 2. Scope of the No-Contest Clause

Even assuming the letters alleged misconduct against the Trustees, the letters cannot be construed as a contest of the Trust Agreement because they could not affect the Trustees or the administration of the Trust. The Settlor's intent governs our interpretation of trust language; if the language is plain, we must carry out its terms. *See Holcombe-Burdette v. Bank of Am.*, 371 S.C. 648, 658, 640 S.E.2d 480, 484–85 (Ct. App. 2006); *id.* at 658, 640 S.E.2d at 485 ("In ascertaining a settlor's intent, if the language of the trust instrument is perfectly plain and capable of legal construction, such language determines the force and the effect of the instrument."); *see also* Beyer et. al., *The Fine Art of Intimidating Disgruntled Beneficiaries with in Terrorem Clauses*, 51 SMU L. Rev. 225, 255 (1998) (noting the threshold question in no-contest cases is defining the triggering conduct). Freedom of disposition is fundamental in our law, *see Mock v. Dowling*, 266 S.C. 274, 276, 222 S.E.2d 773, 774 (1976), and courts must protect and honor that freedom by enforcing the plain provisions of estate documents unless to do so would run afoul of established law or public policy. *See, e.g.*, *In re Estate of Prioleau*, 361 S.C. 627, 631, 606 S.E.2d 769, 772 (2004). No-contest clauses are expressions of a settlor's intent, but like many states, our legislature has followed the lead of the Restatement and the Uniform Probate Code and deemed the clauses unenforceable if the contest is supported by probable cause. S.C. Code Ann. § 62-3-905 (Supp. 2019); Restatement (Third) of Prop.: Wills and Other Donative Transfers § 8.5 (Am. Law Inst. 2003); Unif. Probate Code § 3-905 U.L.A. (amended 2010).

We conclude the only way the ODC filing could even remotely trigger the no-contest clause is by interpreting the filing as an objection to action "taken in good faith by the Trustee." However, because the ODC complaint is privileged, the only way to equate the filing with an objection is by speculating as to its content. A party may not create a genuine issue of material fact through speculation or guesswork. *Nelson v. Piggly Wiggly Cent., Inc.*, 390 S.C. 382, 390, 701 S.E.2d 776, 780 (Ct. App. 2010) (holding one may not create a genuine issue of material fact by speculation or an "inferential leap"). The ODC complaint is of course not part of the record, but several affidavits refer to its contents as alleging misconduct by the Trustees. This is not enough to create a factual dispute, though, because the ODC complaints are privileged and only admissible evidence counts in the summary judgment calculus. *See* Rule 56(e), SCRCP; *see also Hall v. Fedor*, 349 S.C. 169, 175, 561 S.E.2d 654, 657 (Ct. App. 2002) ("Our appellate courts have interpreted Rule 56(e) to mean

materials used to support or refute a motion for summary judgment must be those which would be admissible in evidence.").

While South Carolina enforces no-contest clauses, *see Russell v. Wachovia Bank, N.A.*, 370 S.C. 5, 12, 633 S.E.2d 722, 725 (2006), we must also strictly construe them to avoid a forfeiture, that enemy of equity. *See Litchfield Co. of S.C. v. Kiriakides*, 290 S.C. 220, 225, 349 S.E.2d 344, 347 (Ct. App. 1986) ("[F]orfeitures will be allowed only when intent is clear and no other reasonable construction is possible. . . . Courts will seize upon even slight evidence to prevent a forfeiture." (internal citation omitted)); *see also* Deborah S. Gordon, *Forfeiting Trust*, 57 Wm. & Mary L. Rev. 455, 467 (2015) ("[M]indful of the potentially extreme result of such a clause, which effectively deprives a beneficiary of the opportunity to claim property she believes is rightfully hers, a court will take a conservative approach in deciding whether the specific language of the clause applies to the precise 'contest' that the beneficiary has mounted.").

Commentators have noted the expanding breadth and number of no-contest clauses drafted today, as well as the expanding litigation over them, particularly when the clauses are attached to trusts, whose administration can last decades. *See, e.g.*, Gordon*, supra*, at 484 (discussing "increasingly broad forfeiture clauses"). Whether this expansion promotes the purpose of no-contest clauses—to deter estate fights and their drain on estate funds, foster family harmony, and protect the privacy of trust matters, *see Russell*, 370 S.C. at 12, 633 S.E.2d at 725–26—is not a question before us. The clause here—which would disinherit a beneficiary who "directly or indirectly" objects "in any manner" to a Trustee's good faith conduct—could, if construed literally, apply to a beneficiary who uses an intemperate tone, questions, or even flashes a disapproving eye-roll to a Trustee. We do not doubt the Trustees' patience may have been overextended by the Beneficiaries' actions here. But viewing the no-contest clause as a whole, we are convinced the Settlor's intent was to disinherit only those who disrupted or interfered with the actual administration of the trust. There is not a scintilla of evidence the ODC complaint caused such interference. *See Rafalko v. Georgiadis*, 777 S.E.2d 870, 879–80 (Va. 2015) (holding sons' letters to stepmother and deceased father's former lawyer did not violate no-contest clause of trust because they did not interfere with trust administration); *In Re Estate of Singer*, 920 N.E.2d 943, 947 (N.Y. 2009) (holding testator's son did not violate no-contest clause by deposing father's estate lawyer because deposition did not contest, object to, or oppose estate plan). Accordingly, we affirm the grant of summary judgment to the Beneficiaries on the declaratory judgment cause of action.

B.  The Hold Harmless and Indemnity Clause of the Settlement Agreement

The Trustees next claim the ODC investigation is a "proceeding" to which the Beneficiaries forced them to be a party.  Therefore, according to the Trustees, the Beneficiaries should hold harmless and reimburse the Trustees for their attorney's fees, expenses, and costs in bringing this lawsuit.  We disagree.  Even if the ODC investigation were a "proceeding," the Trustees were not made a "party" to it in any capacity, nor could they be, as the ODC has no jurisdiction over them.  The Settlement Agreement requires the Beneficiaries to indemnify and hold the Trustees harmless for costs, attorney's fees, and expenses incurred by the Trustees only "with respect to" a proceeding to which the Trustees have been made a party.  There is no evidence the Trustees incurred any costs, fees, or expenses in the ODC investigation.  And no rational reading of the hold harmless and indemnity clause would result in the idea that the Trustees could sue the Beneficiaries, claim as damages the costs of bringing the lawsuit, and then seek to have the Beneficiaries foot the bill for being sued.

We therefore affirm the order of the trial court granting summary judgment to the Beneficiaries.  Consequently, we do not address the probable cause and public policy issues.  *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding an appellate court need not address remaining issues when disposition of prior issue is dispositive).  We decide this case without oral argument pursuant to Rule 215, SCACR.

**AFFIRMED.**

**WILLIAMS and GEATHERS, JJ., concur.**