21399

The STATE, Respondent, v. Fred Lee DOSTER, Appellant.

(284 S. E. (2d) 218)

*Howard B. Hammer*, of *Hammer & Bernstein*, Columbia, *for appellant*.

*Atty. Gen., Daniel R. McLeod, Asst. Attys. Gen., Kay G. Crowe* and *Russell D. Ghent*, and *Sol. James C. Anders*, Columbia, *for respondent*.

March 4, 1981.

HARWELL, Justice:

Fred Lee Doster appeals his conviction for conspiracy to possess and distribute marijuana and possession with intent to distribute marijuana.

In mid-November of 1978, Norman Shumard of the Federal Drug Enforcement Administration had a series of meetings with one George Anderson, an unpaid, non-police, confidential informant. On November 27, Shumard had Anderson come by the local DEA office in Columbia to telephone the contact Anderson claimed to have in a marijuana operation. Anderson consented to having the telephone conversation recorded. Testimony at trial subsequently revealed that the number dialed was that of Doster's motel and residence. Shumard identified the voice on the telephone, as recorded, as that of Doster. The conversation concerned plans for a meeting to have 100 pounds of marijuana delivered for a payment of $30,000.

The next evening Shumard met Anderson and Doster at Owens Field Airport in Columbia. Shumard's cover story was that he was purchasing the marijuana for delivery to New York. The three went to a remote area in the airport where Shumard had an aircraft ostensibly waiting. Doster was shown a "flash roll" of money. Apparently satisfied, Doster, according to Shumard, instructed Anderson to go back to "the place" and transfer the marijuana from another car and then come back.

Other law enforcement agents assigned to the case had Anderson under surveillance from the time he left the airport. They testified that Anderson drove towards Lexington but exited on a dirt road off the ramp between Highway 378 and Interstate 20. After a few minutes, the Anderson car emerged followed closely by another vehicle. The other vehicle followed Anderson's car all the way back to Owens Field and parked within one hundred yards of the rendezvous point.

Anderson, upon his return, opened the trunk of his car and thereby revealed two plastic and paper covered bales and one plastic bag containing approximately 100 pounds of marijuana. Shumard immediately arrested Doster. Other agents in the area then apprehended the driver of the second vehicle, identified as Michael Wayne Doster, the 19 or 20 year old son of the appellant. Search of the second vehicle turned up a loaded handgun and, in the trunk, a plastic bag with marijuana in it as well as marijuana residue scattered about the trunk.

During the course of the trial, counsel for appellant expressed an intent to pursue an entrapment defense. Counsel informed the trial court that the defense hoped to demonstrate that Anderson concocted the entire marijuana scheme in an effort to ensnare Doster and thus accomplish some sort of vengeance on him. The matter was complicated by the fact that Anderson was deceased at time of trial.

We are not concerned here with the relative merits of the substantive defense. Our focus is instead upon the propriety of a ruling of the trial judge which appellant Doster alleges blocked his presentation of the entrapment defense and thus denied him a fair trial.

During a hearing held out of the presence of the jury, the defense called Jimmy W. Grimes, an attorney whom Anderson had consulted with. The defense wished to question Grimes concerning matters related to him by Anderson. Grimes, before testifying, stated that what he was going to be called upon to testify on was within the attorney-client privilege.

The attorney-client privilege has long been recognized in this State. The privilege is based upon a public policy that the best interest of society is served by promoting a relationship between the attorney and the client whereby utmost confidence in the continuing secrecy of all confidential disclosures made by the client within the

relationship is maintained. The privilege belongs to the client and, unless waived by him, survives even his death. *South Carolina State Highway Department v. Booker,* 260 S. C. 245, 195 S. E. (2d) 615 (1973). Generally, the party asserting the privilege must raise it. *State v. Love,* S. C., 271 S. E. (2d) 110 (1980).

Many jurisdictions strictly construe the privilege. 81 Am. Jur. (2d) Witnesses § 174, at 210. The reasoning behind the strict construction is that evidence excluded under the privilege is not necessarily incompetent. See generally, McCormick, Handbook of the Law of Evidence, §§ 87, *et seq.* (2d Ed. 1972).

We agree that the privilege must be tailored to protect only confidences disclosed within the relationship. The essential elements giving rise to the privilege were stated by Wigmore to be:

"(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." 8 Wigmore, Evidence § 2292 (McNaughton rev. 1961.)

Not every communication within the attorney and client relationship is privileged. The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice. *N. L. R. B. v. Harvey,* 349 F. (2d) 900 (4th Cir. 1965); *Sepler v. State,* 191 So. (2d) 588 (Fla. App. 1966). This is exemplified by the widely recognized rule that the privilege does not extend to communications in furtherance of criminal tortious or fraudulent conduct. *United States v. United Shoe Machinery Corporation,* 89 F. Supp. 357 (D. Mass. 1950); 125 A. L. R. 508; 16 A. L. R. (2d) 1029.

We recently stated in *State v. Love, supra,* that:

"Whether a communication is privileged is for the trial judge to decide in the light of a preliminary inquiry into all of the facts and circumstances; and this determination by the trial judge is conclusive in the absence of an abuse of discretion. 81 Am. Jur. (2d) Witnesses, Section 222." The court must determine the question of privilege without first requiring disclosure of the substance of the communication. *Steiner v. United States,* 134 F. (2d) 931 (5th Cir.), cert. denied, 319 U. S. 774, 63 S. Ct. 1439, 87 L. Ed. 1721 (1943); *Miller v. Anderson,* 30 Conn. Sup. 501, 294 A. (2d) 344 (1972); *Harrison v. State,* 276 Md. 122, 345 A. (2d) 830 (1975); 97 C. J. S., Witnesses § 305, at 848.

When Grimes took the stand both sides as well as the court questioned him in regard to his attorney-client relationship with Anderson. Grimes testified that Anderson was not a prior client and had never paid him for legal services. He said that Anderson wanted an opinion on whether another attorney would have a conflict in some matter. Grimes was chosen as a third party to avoid disclosure to the attorney concerned. Asked by the court, Grimes again expressed his belief that the attorney-client relationship existed. On cross-examination, Grimes testified that the conversation was in his law office and that Anderson sought him out as a lawyer to give him a legal opinion. He further volunteered:

"Your Honor, my opinion is what the client or the decedent told me at that time has no bearing on himself, any of his affairs, nor his guilt or innocence in any matter. The question that he asked me concerned primarily was whether or not under a given set of facts a single attorney could represent multiple defendants."

The trial judge then ruled that the privilege extended to the communication between Anderson and Grimes.

We do not believe the trial judge abused his discretion under these circumstances. As stated, generally the party asserting the privilege must establish the confidential nature of the communication. Here though the privilege holder was deceased, we recognize the appropriateness of his attorney asserting the privilege on his behalf.

There is no indication that Anderson sought advice to further a then on-going criminal or fraudulent scheme or for continuing tortious conduct. Those allegations were not raised. It is clear that appellant was not denied a right to establish his defense, he was merely denied the license to fish into privileged communications. Doster had the right to present his affirmative defense by whatever means remained available to him.

All remaining issues are disposed of under our Rule 23 since no error is shown and full discussion would be of no precedential value.

Affirmed.

LEWIS, C. J., and LITTLEJOHN, NESS and GREGORY, JJ., concur.