24173

Paul ROSS, M.D., Petitioner v. MEDICAL UNIVERSITY OF SOUTH CAROLINA, James B. Edwards, W. Marcus Newberry, Stanley C. Baker, Jr., Thomas C. Rowland, M.D., Melvin Berlinsky, Wm. Bruce Ezell, Jr., M.D., Cotesworth P. Fishburne, Jr., D.D.S., Herbert C. Granger, Charles B. Hanna, M.D., Robert C. Lake, Jr., E. Conyers O'Bryan Jr., M.D., Claudia W. Peeples, Harrison L. Peeples, M.D., Phillip D. Sasser and Alan E. Stalvey, Defendants, of whom Medical University of South Carolina is Respondent.

(453 S.E (2d) 880)

Supreme Court

*Ellis I. Kahn* and *Justin S. Kahn,* of *Solomon, Kahn, Budman & Stricker,* Charleston, *for petitioner.*

*Richardson S. Rosen* and *Morris D. Rosen,* of *Rosen, Rosen & Hagood,* and *Joseph C. Good, Jr.,* Charleston, *for respondent.*

Heard Oct. 4, 1994.

Decided Dec. 19, 1994; Reh Den. Feb 22, 1995.

CHANDLER, Chief Justice:

We granted certioriari to review the Court of Appeals' opinion of *Ross v. Medical University of South Carolina,* 312 S.C. 532, 435 S.E. (2d) 877 (Ct. App. 1993). We reverse.

## FACTS

Petitioner Paul Ross, M.D. (Ross) was a tenured professor at the Medical University of South Carolina (MUSC) and chairman of the Department of Radiology. His employment was terminated for alleged abuse of his official position for personal financial gain. The termination was upheld by a Faculty Hearing Committee. The Committee's decision was reviewed and concurred in by Dr. Newberry, the Vice President for Academic Affairs (Vice President). The MUSC Board of Trustees then reviewed the case and upheld the termination.

Ross filed suit in Circuit Court, alleging due process violations, breach of contract, accord and satisfaction, defamation,

and review under the Administrative Procedures Act (APA).[1] The suit was removed to Federal Court, which remanded the APA action to the Circuit Court. All other causes of action remain in Federal Court and are presently stayed.

Prior to Circuit Court's review of his termination under the APA, Ross served Requests for Admissions upon MUSC. The requests related to communications between Vice President and Mr. Good, general counsel for MUSC (General Counsel). MUSC moved for a protective order, contending that Circuit Court's review was limited to the agency record so that discovery was not proper. MUSC also argued that the information sought by Ross was protected by attorney-client privilege.

Circuit Court disagreed, holding that MUSC was required to answer the Request for Admissions related to procedural irregularities not appearing in the record.[2] MUSC's appeal of this Order was dismissed as interlocutory. MUSC continued its refusal to answer two of the Requests for Admissions, and Ross moved for sanctions. MUSC was ordered to comply, but again refused. Thereupon, the Circuit Court deemed the Requests admitted, held MUSC in contempt of court, and imposed sanctions.

Court of Appeals vacated the Circuit Court Order. It held that the Circuit Court sits solely as a reviewing court in APA cases and is without jurisdiction to order discovery, stating: "The circuit court's review is confined to the record before the agency. The agency, not the court, has primary jurisdiction and is the finder of fact." *Ross*, 312 S.C. at 534, 435 S.E. (2d) at 879 (citations omitted). We granted certiorari.

## ISSUES

1. Did the Circuit Court, sitting as a reviewing court under the APA, have jurisdiction to order discovery?
2. Is the information requested by Ross protected by the attorney-client privilege?

---

[1] S.C. Code Ann. § 1-23-310 *et seq.* (1986 and Supp. 1993).

[2] Ross claims, essentially, that he was denied a fair hearing at the agency level since the Vice President acted in a dual capacity as both accuser and judge and that there were improper *ex parte* communications made.

## DISCUSSION

### A. *Jurisdiction of Circuit Court in APA Actions*

Ross contends that Court of Appeals, in determining that Circuit Court was without jurisdiction to order discovery, failed to apply S.C. Code Ann. § 1-23-380(f) (1986).[3]

S.C. Code Ann. § 1-23-380(f) provides:

> The review shall be conducted by the court without a jury and shall be confined to the record. *In cases of alleged irregularity in procedure before the agency, not shown in the record, proof thereon may be taken in the court.* The court, upon request, shall hear oral argument and receive written briefs. [Emphasis supplied.]

The language "proof thereon may be taken in the court" has not been interpreted by this Court. However, it is well settled that the words of a statute will be given their plain and ordinary meaning. *Miller v. Doe*, 312 S.C. 444, 441 S.E. (2d) 319 (1994).

We find that § 1-23-380(f) expressly authorizes Circuit Court to accept proof of alleged irregularity in the agency proceeding. The language "proof thereon may be taken in the court" does not require the court itself to "take proof" but, rather, to allow such proof to be entered at the circuit court level, at the court's discretion.[4]

This interpretation follows the general law.

> An administration appeal must be confined to the record except in cases of alleged irregularities and procedure before the agency, not shown on the record, where proof of alleged irregularities may be taken in court. Consequently, an appeal from an administrative tribunal should ordinarily be determined upon the record of that tribunal, and only when that record fails to present the hearing in the manner sufficient for the determination of the merits of the appeal, or when some extraordinary reason re-

---

[3] This section is now codified as S.C. Code Ann. § 1-23-380(5) (Supp. 1993).

[4] In footnote 4 of its opinion, the Court of Appeals cites § 1-23-380(f) stating: "In the limited case of alleged irregularity in procedure before the agency not shown in the record, the circuit court may also take proof itself." Notwithstanding this recognition of the Circuit Court's authority, Court of Appeals did not apply this section to the case at hand.

quires it, should the court hear the evidence. *In the case of an allegation of irregularity not apparent on the record the trial court may, in its discretion, also permit additional evidence to be presented.* For example, a claim of conflict of interest is grounds for conducting such an evidentiary inquiry. . . . Furthermore, a reviewing court has the duty to examine the procedural methods employed at an administrative hearing to ensure that a fair and impartial procedure was used.

2 Am. Jur. (2d) Administrative Law § 611 (emphasis supplied). *See also Adriani v. Commission on Human Rights & Opportunities,* 220 Conn. 307, 596 A. (2d) 426 (1991) (Trial Court abused discretion by refusing plaintiff's proffer of testimony of witnesses to prove allegations of procedural irregularities by employment commission); *Brunswick v. Inland Wetlands Com.,* 29 Conn. App. 634, 617 A. (2d) 466 (1992) (Evidentiary hearing conducted in trial court to investigate allegation of personal interest of commissioner in issuing permit).

Accordingly, § 1-23-380(f) empowers Circuit Court, in its discretion, to order discovery and admit extrinsic evidence in APA cases upon alleged irregularity in the agency proceeding. Court of Appeals erred in holding that Circuit Court had no jurisdiction to order the discovery.

### B. *Attorney-Client Privilege*

Ross' allegations of procedural irregularity center upon: (1) Vice President's dual role as both prosecutor and judge before the agency; (2) Vice President's *ex parte* communications with General Counsel, and (3) MUSC's failure to give Ross or his counsel the final page of the Faculty Hearing Committee report.[5]

MUSC employs a three-step process in faculty grievance actions. First, after a complaint is lodged, it is referred by Vice President to a Faculty Hearing Committee, which Committee holds a hearing and issues its written recommendation

---

[5] Ross was not sent the last page (Page 5) of the report, entitled "Comments," which stated there were "serious concerns relative to actions of MUSC administration in this matter." MUSC contends that this page is not actually part of the Faculty Committee's report and, therefore, was properly withheld from Ross. However, Ross discovered the page when it was submitted in the record.

to Vice President. Second, Vice President reviews the record, then makes his recommendation. If the recommendations of both Vice President and Committee are favorable to the faculty member, "no further action in the matter may be taken." On the other hand, if the recommendation is unfavorable to the faculty member, he or she may appeal to the Board of Trustees.

Ross contends it was improper for Vice President to act as the intermediate judge. He bases the contention upon the fact that Vice President both instigated and investigated the initial complaint against Ross and, also, was a witness at the Faculty Committee hearing. Moreover, Ross contends further that Vice President consulted with General Counsel prior to his concurrence in the Faculty Committee's recommendation of termination. Finally, he contends that General Counsel prepared Vice President's concurrence in the Faculty Committee's findings.[6] Moreover, the last page of the Faculty Committee's report was intentionally sent only to Vice President, General Counsel, and outside counsel for MUSC.[7]

In order to substantiate the allegations of irregularity, Ross served the following Requests to Admit:

5. When [Vice President] consulted with [General Counsel] concerning the recommendation of the Faculty Hearing Committee, [Vice President] requested that [General Counsel] prepare a document stating his agreement with the Faculty Hearing Committee's recommendation. [General Counsel] did prepare that document.

7. In consultation and discussion between [Vice President] and [General Counsel] following the receipt by [Vice President] of the Faculty Hearing committee's recommendation of November 29, 1989, and before [Vice President] signed the document evidencing his approval of the Faculty Hearing Committee's recommendation, there was discussion between [Vice President] and [General Counsel] with respect to page 5, entitled "Comments", of the submission of the Faculty Hearing Committee.

---

[6] General Counsel's initials, along with those of Vice President, appear on the bottom of Vice President's letter of concurrence.

[7] A cover letter on the Faculty Committee's report specifically directed that the last page not be sent to Ross or his counsel.

MUSC refused to answer the Requests, asserting attorney-client privilege; it was subsequently held in contempt. MUSC continues to assert that the privilege extends to the communications between Vice President and General Counsel, and that such communications are not discoverable. We disagree.

S.C. Code Ann. § 1-23-360 (1986) provides:

### Communications by members or employees of agency assigned to decide contested case.

Unless required for the disposition of *ex parte* matters authorized by law, *members or employees of an agency assigned to render a decision* or to make findings of fact and conclusions of law in a contested case *shall not communicate,* directly or indirectly, in connection with any issue of fact, with any person or party, nor, *in connection with any issue of law, with any party or his representative,* except upon notice and opportunity for all parties to participate. An agency member:

(1) May communicate with other members of the agency; and

(2) May have the aid and advice of one or more personal assistants.

MUSC contends that this statute is inapplicable since the Vice President merely issued a recommendation and was not an adjudicator. We disagree. The record clearly refutes this contention. Here, Vice President sat as an intermediate judge in a three-step disciplinary procedure; he was, therefore, a member of MUSC "assigned to render a decision."

MUSC further contends that the Vice President was entitled to confer "with other members of the agency."

MUSC ignores the plain language of the statute which proscribes *ex parte* communications relating to a contested case between the agency "judge" and a party counsel. Here, General Counsel was not merely a member of MUSC, but also represented MUSC in prosecuting the case before the Faculty committee. Under § 1-23-360, the Vice President was prohibited from discussing the case *ex parte* with MUSC's General Counsel.

Attorney-client privilege protects a client and any other person from disclosing confidential communications made to counsel relative to a legal matter. *See*

*generally* McCormick on Evidence § 87 (E. Cleary, 3rd Ed. 1984). However, this privilege is not absolute:

> Not every communication within the attorney and client relationship is privileged. The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice. This is exemplified by the widely recognized rule that the privilege does not extend to communications in furtherance of criminal tortious or fraudulent conduct.

*State v. Doster,* 276 S.C. 647, 651, 284 S.E. (2d) 218, 220 (1981) (internal citations omitted).

The determination of whether the privilege applies is within the sound discretion of the trial judge and his decision will not be reversed absent an abuse of that discretion. *State v. Love,* 275 S.C. 55, 271 S.E. (2d) 110 (1980).

We find that the communications between Vice President and General Counsel are not protected by attorney-client privilege. These communications were *ex parte* and in violation of § 1-23-360, for which criminal sanctions may be imposed.[8] We note that violators of § 1-23-360 are subject to criminal sanctions. Moreover, General Counsel was acting in a representative capacity for MUSC, and not as counsel for Vice President. Vice President, acting in a judicial capacity in the administrative process, was not entitled to confer with General Counsel, who was acting as a prosecutor against Ross.

We reverse the Court of Appeals and affirm Circuit Court's jurisdiction to order discovery under S.C. Code Ann. § 1-23-380(f). Accordingly, we reinstate the Order of the Circuit Court holding MUSC in contempt for its failure to answer the Requests for Admissions. The Requests are deemed admitted. Finally, we remand to the Circuit Court for further proceedings under the APA.

Reversed and remanded.

FINNEY, TOAL, MOORE and WALLER, JJ., concur.

---

[8] The statute provides:

> Any person who violates the provisions of this section [§ 1-23-360] shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than two hundred fifty dollars or imprisoned for not more than six months.