# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In re: Mt. Hawley Insurance Company, Petitioner,

In Which Contravest, Inc., Contravest Construction Company and Plantation Point Horizontal Property Regime Owners Association, Inc., as assignees, are Respondents.

Appellate Case No. 2018-001170

---

## CERTIFIED QUESTION

---

## ON CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

---

Opinion No. 27892
Heard April 17, 2019 – Filed June 12, 2019

---

## CERTIFIED QUESTION ANSWERED

---

C. Mitchell Brown, William C. Wood Jr., and Blake T. Williams, all of Nelson Mullins Riley & Scarborough, LLP, of Columbia; and Andrew K. Epting Jr., of Andrew K. Epting Jr., LLC, of Charleston, all for Petitioner.

Jesse A. Kirchner, Michael A. Timbes and Thomas J. Rode, all of Thurmond Kirchner & Timbes, P.A., of Charleston, for Respondents.

Gray T. Culbreath and Janice Holmes, both of Gallivan, White, & Boyd, PA, of Columbia, for amici curiae The

American Property Casualty Insurance Association and
The South Carolina Insurance Association.

Bert G. Utsey III, of Peters, Murdaugh, Parker, Eltzroth
& Detrick, P.A., of Charleston, and J. Ashley Twombley,
of Twenge & Twombley Law Firm, of Beaufort, for
amicus curiae the South Carolina Association for Justice.

----

**JUSTICE KITTREDGE:**  We are presented with a certified question from the United States Court of Appeals for the Fourth Circuit.  The underlying case is an insurance bad faith action against an insurance company for its failure to defend its insured in a construction defect action.  The insured settled the construction defect action and brought a bad faith tort action.  When the insurer asserted it acted in good faith in denying coverage, the insured sought to discover the reasons why the insurer denied coverage.  According to the insurer, the discovery requests included communications protected by the attorney-client relationship.  The federal district court reviewed the parties' respective positions, determined the insured had established a prima facie case of bad faith, and ordered the questioned documents to be submitted to the court for an *in camera* inspection.  The insurer then sought a writ of mandamus from the Fourth Circuit to vacate the district court's order regarding the discovery dispute.  In turn, the Fourth Circuit certified the following question to this Court:

> Does South Carolina law support application of the "at issue" exception to attorney-client privilege such that a party may waive the privilege by denying liability in its answer?

The parties, especially the insured, assert the certified question does not accurately represent the correct posture of the case.  In fact, the insured concedes the narrow question presented requires an answer in the negative.  We agree, for we find little authority for the untenable proposition that the mere denial of liability in a pleading constitutes a waiver of the attorney-client privilege.  For the reasons set forth below, we elect to analyze the issue narrowly in the limited context of a bad faith action against an insurer.  We are constrained to answer the certified question as follows:  "No, denying liability and/or asserting good faith in the answer does not, standing alone, place the privileged communications 'at issue' in the case."[1]

----

[1]  The plaintiffs (the insured and the plaintiff/condominium owners' association in

# I.

In its Certification Order, the Fourth Circuit summarized the relevant facts as follows:

> Mount Hawley [Insurance Company ("Mount Hawley")] provided ContraVest Construction Company ("Contravest") with excess commercial liability insurance from July 21, 2003, to July 21, 2007. During that period, Contravest constructed the Plantation Point development in Beaufort County, South Carolina. In 2011 the Plantation Point Horizontal Property Regime Owners Association ("the Owners Association") sued Contravest for alleged defective construction of Plantation Point. Mount Hawley refused Contravest's demands to defend or indemnify Contravest in the suit, as Contravest contended was required by its insurance policies, and Contravest ultimately settled the case.
>
> Contravest and the Owners Association subsequently sued Mount Hawley in South Carolina court, alleging bad faith failure to defend or indemnify, breach of contract, and unjust enrichment. Mount Hawley removed the case to the United States District Court for the District of South Carolina pursuant to 28 U.S.C. § 1441 (2012), and federal subject matter jurisdiction exists under 28 U.S.C. § 1332 (2012) based upon complete diversity of citizenship between the parties and damages alleged to be greater than $75,000.
>
> During discovery, the plaintiffs sought production of, first, Mount Hawley's file on Contravest's claim for excess coverage relating to the Plantation Point suit, and later, Mount Hawley's files relating to all of

the construction defect action) contend the federal district court decided to conduct an *in camera* review of the questioned documents based on more than a mere denial of liability in the insurer's answer. We agree. *See ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 617–23 (D.S.C. 2017) (including the district court's discussion of the need for the insured to make a prima facie showing of bad faith—in addition to the insurer's denial of liability in its answer—under the test set forth in *City of Myrtle Beach v. United National Insurance Co.*, C/A No. 4:08-1183-TLW-SVH, 2010 WL 3420044 (D.S.C. Aug. 27, 2010), and finding the plaintiffs had made such a showing there).

Contravest's claims under its excess liability policies. *See* Fed. R. Civ. P. 26(b)(1), 34(a)(1)(A). Mount Hawley contended that these files contained material protected by the attorney-client privilege, and produced files in redacted form with accompanying privilege logs. *See* Fed. R. Civ. P. 26(b)(5)(A). The plaintiffs filed multiple motions to compel, arguing that Mount Hawley waived the attorney-client privilege as to these files. *See* Fed. R. Civ. P. 37(a)(3)(B)(iv). The district court adopted the recommendation of the magistrate judge, granted the motions to compel, and ordered Mount Hawley to produce the files for in camera inspection. *ContraVest Inc. v. Mt. Hawley Ins. Co.*, 273 F. Supp. 3d 607, 622–23 (D.S.C. 2017). The district court subsequently denied Mount Hawley's motion for reconsideration [in which it asked the district court to certify four questions of law to the Supreme Court of South Carolina]. Mount Hawley then sought a writ of mandamus from [the Fourth Circuit] to vacate the district court's order granting the motions to compel.

[]

In its petition for a writ of mandamus, Mount Hawley challenges the district court's holding that the relevant files were not protected by the attorney-client privilege because Mount Hawley put them "at issue" in the case by denying liability for bad faith failure to defend or indemnify. Because this is a diversity action involving claims for which South Carolina law provides the rule of decision, South Carolina's law of attorney-client privilege applies. *See Ashcraft v. Conoco, Inc.*, 218 F.3d 282, 285 n.5 (4th Cir. 2000); Fed. R. Evid. 501. In South Carolina the attorney-client privilege is defined as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Tobaccoville USA, Inc. v. McMaster*, 387 S.C. 287, 293, 692 S.E.2d 526, 530 (2010). "In general, the burden of establishing the privilege rests upon the party asserting it." *Wilson v. Preston*, 378 S.C. 348,

359, 662 S.E.2d 580, 585 (2008).

In finding that the relevant files were not protected by South Carolina's attorney-client privilege, the district court relied on *City of Myrtle Beach v. United Nat[ional] Ins[urance] Co.*, No. 4:08-1183-TLW-SVH, 2010 WL 3420044 (D.S.C. Aug. 27, 2010) (unpublished). *City of Myrtle Beach* also involved a bad faith insurance suit under South Carolina law in which the insured sought to compel the insurer to produce the relevant claim files, and the insurer argued that the files contained material protected by the attorney-client privilege. *Id.* at *1–2. The district court adopted the approach articulated in *Hearn v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975), as "consistent with established South Carolina law." *Id.* at *5. Applying *Hearn*, the district court found that

> there is no per se waiver of the attorney client privilege simply by a plaintiff making allegations of bad faith. However, if a defendant voluntarily injects an issue in the case, whether legal or factual, the insurer voluntarily waives, explicitly or impliedly, the attorney-client privilege. Thus, "voluntarily injecting" the issue is not limited to asserting the advice of counsel as an affirmative defense. A party's assertion of a new position of law or fact may be the basis of waiver.

*Id.* (citation omitted).

Applying this definition of waiver, the court in *City of Myrtle Beach* found that "for the purposes of the motion to compel, the insured has presented a prima facie case of bad faith," and the insurer failed to meet its burden of establishing the absence of waiver of the attorney client privilege on account of the defenses asserted in its answer, including that the insurer acted reasonably and in good faith. *Id.* at *7. The court noted that "while this ruling amounts to a virtual per se waiver of the privilege in this case, this result is based on the facts and issues presented by the insurer in its Answer and its failure to meet its burden as to the applicability of the privilege with this in mind." *Id.*

In the present case, the district court rejected Mount Hawley's argument that *City of Myrtle Beach* was inconsistent with South

Carolina law in light of the fact that one member of the Supreme Court of South Carolina criticized the *Hearn* decision in a separate opinion concurring in part and dissenting in part. *See Davis v. Parkview Apartments*, 409 S.C. 266, 291–96, 762 S.E.2d 535, 549–51 (2014) (Pleicones, J., concurring in part and dissenting in part). The district court found "that the numerous decisions that have applied *City of Myrtle Beach* in this district provide stronger evidence than the separate opinion in *Davis* that the Supreme Court of South Carolina would adopt such an approach." *ContraVest*, 273 F. Supp. 3d at 616. The district court also concluded that this approach strikes the best balance between "the important policy goals of the attorney-client privilege against the substantive interests underlying an insured bad faith claim." *Id.* (citation omitted).

Following the approach articulated in *City of Myrtle Beach*, the district court concluded that because the plaintiffs had established a prima facie case of bad faith failure to insure, and Mount Hawley in its answer denied bad faith liability, Mount Hawley waived the attorney-client privilege with respect to the attorney-client communications in the claim files, to the extent such communications are relevant under [Rule 26 of the Federal Rules of Civil Procedure]. *Id.* at 611–23.[2] The court thus ordered Mount Hawley to produce the files for an in camera review. *Id.* at 623.

Order of Certification at 2–6 (footnotes omitted) (internal alteration marks omitted).

## II.

There are three broad approaches that jurisdictions use to determine the presence or absence of a waiver of the attorney-client privilege. *See Bertelsen v. Allstate Ins. Co.*, 796 N.W.2d 685, 702 n.6 (S.D. 2011) (describing the three approaches and collecting cases); Restatement (Third) of the Law Governing Lawyers § 80 Reporter's Note cmt. b (2000) (same); *infra* Part II.B (discussing the three approaches in more detail). However, regardless of what test is employed by the

---

[2] The district court also noted the *in camera* review would focus on whether the documents in the claim files were protected by the work-product doctrine. *ContraVest*, 273 F. Supp. 3d at 623 n.13.

Court, the answer to the certified question must be "no," as stated above. Because the certified question necessarily involves a determination of the circumstances under which a communication otherwise protected by the attorney-client privilege is discoverable under South Carolina law, we will examine the law generally and set forth the proper framework to be applied in South Carolina in a tort action by an insured against the insurer for bad faith refusal to provide coverage.

## A. Existing South Carolina Law

### i. *Discovery and Privilege*

The scope of discovery in South Carolina is generally broad. *Oncology & Hematology Assocs. of S.C., L.L.C. v. S.C. Dep't of Health & Envtl. Control*, 387 S.C. 380, 385, 692 S.E.2d 920, 923 (2010); *S.C. State Highway Dep't v. Booker*, 260 S.C. 245, 252–53, 195 S.E.2d 615, 619 (1973) ("Since dockets must be kept current largely by settlements, litigants and attorneys should be allowed liberal discovery. Such would, of course, increase the likelihood of fair trial." (alteration in original) (quoting *Hodge v. Myers*, 255 S.C. 542, 548, 180 S.E.2d 203, 206 (1971))). As a result, parties may obtain discovery regarding any matter that is not privileged so long as it is relevant to the subject matter involved in the pending claim. Rule 26(b)(1), SCRCP.

South Carolina's sole evidentiary rule regarding privileges is found in Rule 501, SCRE, which states:

> Except as required by the Constitution of South Carolina, by the Constitution of the United States or by South Carolina statute, the privilege of a witness, person or government shall be governed by the principles of the common law as they may be interpreted by the courts in light of reason and experience.

Rule 501, SCRE.

The attorney-client privilege has long been recognized in this State and protects against disclosure of confidential communications by a client to his attorney regarding a legal matter. *Tobaccoville USA*, 387 S.C. at 293, 692 S.E.2d at 529; *State v. Doster*, 276 S.C. 647, 650, 284 S.E.2d 218, 219 (1981). The privilege is based upon a "wise public policy" that determines the best interest of society is served by "inviting the utmost confidence on the part of the client in disclosing his secrets to his professional advisor, under the pledge of the law that such confidence shall not be abused by permitting disclosure of such communications." *Booker*,

260 S.C. at 254, 195 S.E.2d at 619–20; *see also Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 108 (2009) ("By assuring confidentiality, the privilege encourages clients to make 'full and frank' disclosures to their attorneys, who are then better able to provide candid advice and effective representation." (citation omitted)); *Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.*, 422 S.C. 643, 647 n.1, 813 S.E.2d 696, 699 n.1 (2018) (describing the privilege as "rooted in the imperative need for confidence and trust" (quoting *Jaffee v. Redmond*, 518 U.S. 1, 10 (1996))). South Carolina courts strictly construe the attorney-client privilege. *Doster*, 276 S.C. at 651, 284 S.E.2d at 219.

Despite the importance of confidential communications between an attorney and his client, we, like other jurisdictions, must understand and examine the tension that is created by competing policy goals. *See Doster*, 276 S.C. at 651, 284 S.E.2d at 220 ("The public policy protecting confidential communications must be balanced against the public interest in the proper administration of justice."). Thus, while South Carolina bestows significant weight to the attorney-client privilege, the privilege is not absolute. *See Ross v. Med. Univ. of S.C.*, 317 S.C. 377, 384, 453 S.E.2d 880, 884 (1994). For example, the attorney-client privilege does not extend to communications made in furtherance of criminal, tortious, or fraudulent conduct. *Doster*, 276 S.C. at 651, 284 S.E.2d at 220. Likewise, information—in and of itself—does not become privileged merely because it was communicated to an attorney. *Booker*, 260 S.C. at 256, 195 S.E.2d at 621.

Similarly, the client, as the sole owner of the attorney-client privilege, can waive the privilege. *State v. Thompson*, 329 S.C. 72, 76–77, 495 S.E.2d 437, 439 (1998). Such waiver must be "distinct and unequivocal." *Id.* As a result, when a party asserts an implied waiver of privilege, "caution must be exercised, for waiver will not be implied from doubtful acts." *Id.* at 77, 495 S.E.2d at 439.

Generally, the party claiming the privilege has the burden of establishing the confidential nature of the communication, including the absence of waiver. *State v. Love*, 275 S.C. 55, 59, 271 S.E.2d 110, 112 (1980). There is, however, considerable authority for a burden-shifting analysis.[3] We hold that the party

---

[3] *Compare, e.g.*, *James v. Harris Cty.*, 237 F.R.D. 606, 609 (S.D. Tex. 2006) ("The party asserting a privilege has the burden to demonstrate that the privilege exists under the circumstances presented. Courts typically hold that waiver is a negative burden that the privilege proponent must satisfy." (citations omitted)), *and Jordan v. Ct. of App. for Fourth Sup. Jud. Dist.*, 701 S.W.2d 644, 648–49 (Tex. 1985) ("The burden of proof to establish the existence of a privilege rests on the one

asserting the privilege has the initial burden to make a prima facie showing that the communications in question are privileged; if the initial burden is met, the party challenging the privilege must establish the communications are otherwise discoverable under an exception or waiver.

### ii. *Insurance and Bad Faith Claims*

"In this jurisdiction it has long been recognized that insurance is a business affected with a public interest." *Hinds v. United Ins. Co. of Am.*, 248 S.C. 285, 291, 149 S.E.2d 771, 774–75 (1966). In furtherance of this policy, this Court has recognized, in addition to a breach of contract action, a separate tort action for an insurer's bad-faith refusal to pay benefits under an insurance policy, whether for a first-party claim or a third-party claim. *Tadlock Painting Co. v. Md. Cas. Co.*, 322 S.C. 498, 500–01, 473 S.E.2d 52, 53–54 (1996) (rejecting an insurer's argument that bad faith must be premised on breach of an express contractual provision); *Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983). As the *Nichols* Court explained:

> Absent the threat of tort action, the insurance company can, with complete impunity, deny any claim they wish, whether valid or not. During the ensuing period of litigation following such a denial, the

---

asserting it. If the matter for which a privilege is sought has been disclosed to a third party, thus raising the question of waiver of the privilege, the party asserting the privilege has the burden of proving that no waiver has occurred." (citations omitted)), *with Shumaker, Loop & Kendrick, L.L.P. v. Zaremba*, 403 B.R. 480, 483 (N.D. Ohio 2009) ("The general rule is that the burden of establishing the existence of the privilege rests with the party claiming it. Case law is clear that it is the burden of the proponent of the privilege to establish that the privilege has not been waived, for example, by disclosure to a third party. . . . There is also general agreement among many courts and circuits that once a prima facie case of privilege is established by a proponent, the party challenging the privilege then has the burden to establish that the communications in question are otherwise discoverable under an exception or waiver." (internal citations omitted)), *and Bagwell v. Pa. Dep't of Educ.*, 103 A.3d 409, 420 (Pa. Commw. Ct. 2014) ("The confusion regarding who bears the burden of proving waiver of a privilege is understandable. Absence of waiver is one of the elements required to establish the privilege. However, when waiver is the focus of a dispute, the burden is shifted to the party asserting waiver." (footnote omitted) (citations omitted)).

insurance company has the benefit of profiting on the use of the insured's money. Heretofore, the only compensation a successful insured could expect through litigation was the belated payment of his claim and the possibility of recovering attorney fees up to [$2,500, as set by statute].

We hold today that if an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action. Actual damages are not limited by the contract. Further, if he can demonstrate the insurer's actions were willful or in reckless disregard of the insured's rights, he can recover punitive damages.

*Nichols*, 279 S.C. at 340, 306 S.E.2d at 619 (internal citations omitted) (internal quotation and alteration marks omitted).

The Court has oft expressed similar concerns regarding an insurer denying coverage with impunity. *See, e.g.*, *Varnadore v. Nationwide Mut. Ins. Co.*, 289 S.C. 155, 158, 345 S.E.2d 711, 713 (1986) (rejecting an insurer's argument that it was entitled to a directed verdict because, based on its own investigation, it believed there was a reasonable basis to deny the claim, and stating, "This position is not tenable. *First, it binds the insured to the findings and conclusions of the insurer's own independent investigation; next, it effectually insulates the insurer from liability; and finally, it forecloses a jury consideration of the insured's evidence of bad faith*." (emphasis added)).

These decisions promoted "this State's long held philosophy that those in the insurance industry who fail to deal in good faith should be penalized." *Duncan v. Provident Mut. Life Ins. Co. of Phila.*, 310 S.C. 465, 468, 427 S.E.2d 657, 659 (1993). Of course, however, "[i]f there is a reasonable ground for contesting a claim, there is no bad faith." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 360, 415 S.E.2d 393, 397 (1992). The bad faith determination must be judged by the evidence before the insurance company at the time it denied the claim. *Howard v. State Farm Mut. Auto. Ins. Co.*, 316 S.C. 445, 448, 450 S.E.2d 582, 584 (1994) (per curiam). Thus, evidence arising after the denial of the claim is not relevant to the propriety of the insurer's conduct at the time of its refusal. *Id.*

The Court has often observed that the relationship between an insurer and its insured is "special," more so than parties in a mere contractual relationship. *See,*

*e.g.*, *Tadlock Painting*, 322 S.C. at 503 n.5, 473 S.E.2d at 55 n.5; *Williams v. Riedman*, 339 S.C. 251, 268–74, 529 S.E.2d 28, 36–40 (Ct. App. 2000) (discussing the "special relationship" between an insurance company and its insured, and distinguishing other types of relationships from that "special" one).  The basis of this special relationship between the insurer and the insured derives from an extension of the implied covenant of good faith and fair dealing that exists in all contracts.  *Tadlock*, 322 S.C. at 501–03 & nn.4–5, 473 S.E.2d at 54–55 & nn.4–5 (quoting *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1269 (Ariz. 1992) (en banc); *Carolina Bank & Trust Co. v. St. Paul Fire & Marine Co.*, 279 S.C. 576, 580, 310 S.E.2d 163, 165 (Ct. App. 1983)).

With this general background, we turn to the three approaches to the waiver of the attorney-client privilege.

## B. Various Approaches

This Court has not previously been tasked with harmonizing attorney-client privilege and insurance bad faith law.  As the Supreme Court of Washington noted, insurance bad faith claims place in tension three valued principles:  on the one side, the attorney-client privilege; and on the other side, the importance of broad discovery and holding insurance companies accountable for their bad acts.  *See Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239, 245–46 (Wash. 2013) (en banc).  As mentioned previously, there are three broad approaches jurisdictions take to resolve this tension.  *Bertelsen*, 796 N.W.2d at 702 n.6; Restatement (Third) of the Law Governing Lawyers § 80 Reporter's Note cmt. b.  We acknowledge that none of the various approaches is without legitimate criticisms.

First, a "substantial minority" of jurisdictions have broadened the crime-fraud exception to the attorney-client privilege and found the privilege does not extend to any communications in furtherance of any crime *or* tort, including bad faith insurance claims.[4]  These jurisdictions have typically found the entire pre-denial claim file discoverable.[5]  While this approach would certainly promote South Carolina's policies in favor of promoting broad discovery and holding insurers

---

[4] *Cedell*, 295 P.3d at 251 (Alexander, J., dissenting) (citing 2 Edward J. Imwinkelried, *The New Wigmore:  A Treatise on Evidence:  Evidentiary Privileges* § 6.13.2(d)(1), at 1174 (2d ed. 2010)).

[5] *See, e.g.*, *Silva v. Fire Ins. Exch.*, 112 F.R.D. 699, 699 (D. Mont. 1986); *Boone v. Vanliner Ins. Co.*, 744 N.E.2d 154, 157 (Ohio 2001).

accountable when they act in bad faith, we reject it, as the approach places only nominal value on the importance of the attorney-client privilege.

Second, and on the other extreme, other jurisdictions have upheld the attorney-client privilege absent direct, express reliance on a privileged communication by a client in making out his claim or defense. Such jurisdictions reject the suggestion of an *implied* waiver of the attorney-client privilege.[6] We reject this approach as well, as it fails to balance the attorney-client privilege with any competing policy considerations. *See Doster*, 276 S.C. at 651, 284 S.E.2d at 220 ("The public policy protecting confidential communications *must* be balanced against the public interest in the proper administration of justice." (emphasis added)).

Third, some jurisdictions take a middle-ground approach and find the answer depends on a case-by-case analysis of the facts.[7] This is the general approach we adopt when determining if the attorney-client privilege has been waived in a tort action against an insurer for bad faith refusal to deny coverage.

We find the case of *State Farm Mutual Automobile Insurance Co. v. Lee* from the Supreme Court of Arizona instructive. *See* 13 P.3d 1169 (Ariz. 2000) (en banc). In *Lee*, a class of insureds brought claims for insurance fraud and bad faith and sought discovery of their insurer's files and documents related to the insurer's pattern of rejecting their underinsured and uninsured claims. *Id.* at 1170. The insurer resisted discovery, arguing the documents were protected by the attorney-client privilege because it had sought and received advice of counsel about whether to pay or reject the insureds' claims. *Id.* at 1170, 1172. However, the insurer "denied it intended to show good faith by advancing a defense of reliance on advice of counsel." *Id.* at 1172. The trial court granted the insureds' motion to compel, finding the insurer had waived the privilege:

> [The insurer has] claimed that its managers held a good faith belief in their interpretation that stacking was not permitted under its insurance policies. *While not expressly setting forth the advice of counsel*

---

[6] *See, e.g.*, *Rhone-Poulenc Rorer Inc. v. Home Indem. Co.*, 32 F.3d 851, 863–64 (3d Cir. 1994); *Palmer ex rel. Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 907 (Mont. 1993).

[7] *See, e.g.*, *Hearn*, 68 F.R.D. at 581; *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1183–84 (Ariz. 2000) (en banc); *Tackett v. State Farm Fire & Cas. Ins. Co.*, 653 A.2d 254, 262–63 (Del. 1995).

*defense*, the facts in this case demonstrate that the [insurer's] position on stacking was made after having its counsel review the applicable statutes and developing cases and advise the corporate decision makers. Thus, the *advice of counsel was a part of the basis for [the insurer's] position* that was taken. *The advice of counsel defense is impliedly one of the bases for the defense [the insurer] maintain[s] in this action.* [The insurer has], therefore, impliedly waived the attorney-client privilege.

*Id.* at 1172–73 (internal alteration marks omitted).

The Arizona Supreme Court ultimately upheld the trial court's decision granting the insureds' motion to compel. *Id.* at 1173, 1184. The court rested its decision on the fact that the insurer defended its denial of coverage based on its agents' subjective understanding of the law—*as informed by counsel*—rather than defending exclusively on an objective reading of the disputed policy exclusions. *See, e.g., id.* at 1173, 1174 ("What [the insurer] knew about the law obviously included what it learned from its lawyers."). In reaching its holding, the court concluded that in cases "in which the litigant claiming the privilege relies on and advances as a claim or defense a subjective and allegedly reasonable evaluation of the law—but an evaluation that necessarily incorporates what the litigant learned from its lawyer—the communication is discoverable and admissible." *Id.* at 1175. As the court explained:

> "A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege. *It is not to be both a sword and a shield*." [8 Wigmore, § 2388, at 855].
>
> . . . .
>
> [Thus], a litigant's affirmative disavowal of express reliance on the privileged communication is not enough to prevent a finding of waiver. When a litigant seeks to establish its mental state by asserting that it acted after investigating the law and reaching a well-founded belief that the law permitted the action it took, then the extent of its investigation and the basis for its subjective evaluation are called into question. Thus, the advice received from counsel as part of its

investigation and evaluation is not only relevant but, on an issue such as this, inextricably intertwined with the court's truth-seeking functions. A litigant cannot assert a defense based on the contention that it acted reasonably because of what it did to educate itself about the law, when the investigation and knowledge about the law included information it obtained from its lawyer, and then use the privilege to preclude the other party from ascertaining what it actually learned and knew. . . .

*Id.* at 1176–78 & n.4 (emphasis added) (citations omitted) (internal quotation and alteration marks omitted) (discussing with approval the holding in *Tackett*, 653 A.2d at 259–60).

The *Lee* court addressed the question certified by the Fourth Circuit here, recognizing its approach would prohibit a finding of waiver based solely on "the mere filing of a bad faith action, the denial of bad faith [in the answer to the complaint], or the affirmative claim of good faith." *Id.* at 1179 (applying the approach set forth in Restatement (Third) of the Law Governing Lawyers § 80(1)(a)).[8] Under the Arizona Supreme Court's interpretation of the Restatement,

The party that would assert the privilege has not waived unless it has *asserted some claim or defense*, such as the reasonableness of its evaluation of the law, *which necessarily includes the information received from counsel*. In that situation, the party claiming the privilege has interjected the issue of advice of counsel into the litigation to the extent that recognition of the privilege would deny the opposing party access to proof without which it would be impossible for the factfinder to fairly determine the very issue raised by that party. We believe such a point is reached when, as in the present case,

---

[8] Section 80(1)(a) of the Restatement (Third) of the Law Governing Lawyers provides:

The attorney-client privilege is waived for any relevant communication if the client asserts as to a material issue in a proceeding that: (a) the client acted upon the advice of a lawyer or that *the advice was otherwise relevant to the legal significance of the client's conduct* . . . .

(Emphasis added.)

the party asserting the privilege claims its conduct was proper and permitted by law and based in whole or in part on its evaluation of the state of the law. In that situation, the party's knowledge about the law is vital, and the advice of counsel is highly relevant to the legal significance of the client's conduct. Add to that *the fact that the truth cannot be found absent exploration of that issue*, and the conditions of RESTATEMENT § 80 are met.

*Id.* (emphasis added).

*Lee* was not unanimous. The *Lee* majority noted the dissent and the insurer (like Mount Hawley) argued the insureds, and not the insurer, raised the subjective good faith of the insurer's claims people; however, the majority rejected the argument because it was not the insurer's mere denial of that allegation that waived the privilege, but instead was the insurer's "affirmative assertion that its actions were reasonable because of its [subjective] evaluation of the law, based on its interpretations of the policies, statutes, and case law, and because of what its personnel actually knew or did." *Id.* at 1180–81 & n.7, 1182 ("It is not enough that plaintiff brings the privilege holder's mental state in issue. The waiver exists only when the privilege holder raises and defends on the theory that its mental state was based on its evaluation of the law and the facts show that evaluation included and was informed by advice from legal counsel."). The court noted it would be "difficult" for the insurer to respond to the insureds' allegations of subjective bad faith "without affirmatively alleging that it investigated and evaluated the law." *Id.* at 1182. However, the court stated it was not impossible, and that the insurer "could do so simply by denying that it knew it was acting unlawfully and relying [solely] on a defense of objective reasonableness." *Id.* at 1182–83 (acknowledging that whichever strategy the insurer chose, it was "faced with serious problems about the advice of counsel" to the extent it was, in some ways, "between Scylla and Charybdis").

The court also noted the criticisms of its approach from decisions such as *Rhone-Poulenc*, and in return pointed out the problems inherent in the *Rhone-Poulenc* approach advanced by Mount Hawley here:

It simply makes a mockery of the law to allow a litigant to claim on the one hand that it acted reasonably because it made a legal evaluation from which it concluded that the law permitted it to act in a certain manner, while at the same time allowing that litigant to withhold from its adversary and the factfinder information it received

from counsel on that very subject and that therefore was included in its evaluation. The sword and shield metaphor would truly apply were we to allow a party to raise the privilege in that situation.

*Id.* at 1182.[9]

*Lee* made plain the importance of the attorney-client privilege and reiterated that a waiver would not be lightly found:

We assume client and counsel will confer in every case, trading information for advice. This does not waive the privilege. We assume most if not all actions taken will be based on counsel's advice. This does not waive the privilege. Based on counsel's advice, the client will always have subjective evaluations of its claims and defenses. This does not waive the privilege. All of this occurred in the present case, and none of it, separately or together, created an implied waiver. But the present case has one more factor—[the insurer] claims its actions were the result of its reasonable and good-faith belief that its conduct was permitted by law ***and*** its subjective belief based on its claims agents' investigation into and evaluation of the law. It turns out that the investigation and evaluation included information and advice received from a number of lawyers. It is the last element, combined with the others, that impliedly waives the privilege. State Farm claims that its actions were prompted by what its employees knew and believed, not by what its lawyers told them. *But a litigant cannot with one hand wield the sword—asserting as a*

_____

[9] Mount Hawley additionally contends that anything less than adopting the *Rhone-Poulenc* approach would chill attorney-client communications due to the destabilization of the privilege. We agree with the Supreme Court of Ohio's dismissal of this argument:

This argument is not well taken because it assumes that insurers will violate their duty to conduct a thorough investigation by failing, when necessary, to seek legal counsel regarding whether an insured's claim is covered under the policy of insurance, in order to avoid the [mere possibility of the] insured later having access to such communications, through discovery.

*Boone*, 744 N.E.2d at 157. Such an assumption would be speculative, at best.

*defense that, as the law requires, it made a reasonable investigation
into the state of the law and in good faith drew conclusions from that
investigation—and with the other hand raise the shield—using the
privilege to keep the jury from finding out what its employees actually
did, learned in, and gained from that investigation.*

*. . . .*

[A party] is not permitted to thrust his knowledge into the litigation as
a foundation to sustain his claim while simultaneously retaining the
lawyer-client privilege to frustrate proof negating the claim asserted.
Such a tactic would repudiate the sword-shield maxim.

*Id.* at 1183–84 (second emphasis added) (citation omitted) (internal quotation and
alteration marks omitted).

In finding the *Lee* framework instructive, we emphasize the sanctity of the
attorney-client privilege. In this regard, a client does not waive the privilege
simply by bringing or defending a lawsuit. We adopt the *Lee* framework in a tort
action against an insurer for bad faith refusal to provide coverage, and we impose
the additional requirement that the party seeking waiver of the attorney-client
privilege make a prima facie showing of bad faith.

### III.

Insurance bad faith actions necessarily bring into conflict the competing policy
considerations of protecting the attorney-client privilege and promoting broad
discovery to facilitate the truth-seeking function of our justice system. In
balancing these considerations, we find the *Lee* framework is the most consistent
with South Carolina's policy of strictly construing the attorney-client privilege and
requiring waiver to be "distinct and unequivocal." *See Thompson*, 329 S.C. at 76–
77, 495 S.E.2d at 439; *Doster*, 276 S.C. at 651, 284 S.E.2d at 219. This case-by-
case approach accounts for and fairly distributes the risks and benefits of the
various competing public policies. We therefore answer the certified question
from the United States Court of Appeals for the Fourth Circuit by holding that a
denial of bad faith and/or the assertion of good faith in the answer does not,
standing alone, place a privileged communication "at issue" in a case such that the
attorney-client privilege is waived.

**CERTIFIED QUESTION ANSWERED.**

**BEATTY, C.J., HEARN, FEW and JAMES, JJ., concur.**